COLUMBUS BAR ASSOCIATION *v*. KIESLING.

[Cite as *Columbus Bar Assn. v. Kiesling*,

125 Ohio St.3d 36, 2010-Ohio-1555.]

*Attorneys at law — Misconduct — Multiple disciplinary violations — Disbarment.*

(No. 2009-2037 — Submitted January 13, 2010 — Decided April 12, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 08-057.

_____

**Per Curiam**.

{¶ 1} Respondent, Charles Mark Kiesling, Attorney Registration No. 0019576, whose last registered address is in Columbus, was admitted to the practice of law in Ohio in 1980.

{¶ 2} From July 2007 through May 2009, relator, Columbus Bar Association, received eight grievances against respondent. Relator's original complaint encompassed three counts arising from a grievance filed by a client regarding respondent's neglect of an estate, refusal to return business records, and failure to advise the client to file city income tax returns, and a fourth count regarding respondent's conviction for unlawful accounting practices.

{¶ 3} In January 2009, relator amended its complaint, adding four additional counts: one arising from a grievance filed by a second client alleging commingling and failure to safeguard client property, one alleging respondent's abandonment of his law practice, one arising from a grievance filed by a third client and alleging neglect and misuse of trust funds belonging to that client's company, and one alleging respondent's failure to cooperate in the disciplinary process. In June 2009, relator filed a second amended complaint to include an

additional count of defalcation of company funds belonging to a company owned by a fourth client.

{¶ 4} When attempts to serve the complaint, amended complaint, and second amended complaint on respondent by certified and regular mail at numerous addresses failed, relator served them on the Clerk of this court in accordance with Gov.Bar R. V(11)(B). Because respondent failed to file an answer to any of the complaints, relator moved for a default judgment on September 23, 2009.

{¶ 5} In support of its default motion, relator submitted the following evidence: (1) an affidavit of Bruce A. Campbell, bar counsel for the Columbus Bar Association, with supporting documentation, (2) respondent's September 24, 2007 deposition transcript, (3) respondent's January 7, 2009 deposition transcript, (4) an April 7, 2009 deposition transcript demonstrating respondent's failure to appear, (5) an affidavit of the first client with supporting documentation, (6) a certified copy of the judgment entry of respondent's conviction for unlawful accounting practices in the Bellefontaine Municipal Court, (7) an affidavit of the second client with supporting documentation, (8) an affidavit of the third client with supporting documentation, (9) an affidavit of respondent's landlord with supporting documentation, and (10) an affidavit of the fourth client with supporting documentation.

{¶ 6} The Board of Commissioners on Grievances and Discipline referred the default motion to a master commissioner, who prepared a report and recommendation for the board's consideration. The board adopted the master commissioner's findings that relator had submitted sufficient evidence to demonstrate that respondent had violated Gov.Bar R. V(4)(G) and VI(1)(D), that his conduct prior to February 1, 2007, violated seven rules of the Code of Professional Responsibility, and that his conduct on or after February 11, 2007, violated 11 of the Rules of Professional Conduct. Accordingly, the board adopted

the master commissioner's recommendation that this court permanently disbar respondent from practicing law in the state of Ohio. For the reasons that follow, we find that respondent committed professional misconduct and hold that disbarment is appropriate.

## Misconduct

*Count One – Client No. 1's Estate Grievance*

{¶ 7} Client No. 1 was the administrator of the estate of her mother, who died on January 3, 1999. In February 1999, client No. 1 retained respondent to represent the estate, and he assumed responsibility for probating the decedent's will and preparing and filing estate tax returns. Although respondent filed an application to probate the will in November 2002, over the course of the following two years he failed to respond to his client's inquiries regarding the status of the probate matter.

{¶ 8} In January 2005, respondent notified his client that the estate owed the Ohio Department of Taxation estate taxes of $9,817.97. Although his client promptly provided a check for the taxes, as well as a $950 check for legal services, respondent waited approximately six months to file the estate tax return. In November 2005, the Ohio Department of Taxation sent respondent a letter notifying him of penalties and interest assessed against the estate and offering the opportunity to demonstrate reasonable cause for the late filing. However, respondent did not notify his client of the assessment or otherwise respond to the letter. The client learned of the assessment, including a $2,454.49 penalty and a $3,785.72 interest charge, in November 2006 and paid it.

{¶ 9} Additionally, in December 2006, the client received and entrusted to respondent a letter and documents from National City Bank regarding the decedent's brokerage account that required action. Respondent failed to respond to the bank and failed to respond to his client's phone calls regarding the tax and bank matters.

{¶ 10} Because the legal fees necessary to pursue her claim of $6,240.21 against respondent were prohibitive, the client filed a complaint in small-claims court and obtained a default judgment of $3,000 (the maximum award permitted in that court), which respondent has failed to pay.

{¶ 11} Because respondent neglected his client's mother's estate, resulting in damages to his client in excess of $6,000, the board found, and we agree, that he violated DR 1-102(A)(6) (prohibiting conduct adversely reflecting on the lawyer's fitness to practice law), 6-101(A)(3) (prohibiting neglect of an entrusted legal matter), 7-101(A)(1) (prohibiting intentional failure to seek the lawful objectives of clients), and 7-101(A)(3) (prohibiting intentionally prejudicing or damaging a client in the course of representation).

*Count Two – Client No. 1's Records*

{¶ 12} For a number of years, respondent prepared tax returns for client No. 1, her late husband, and his businesses and maintained those tax returns and worksheets in his possession. In January 2007, client No. 1 sent respondent a letter requesting all of the tax records for her, her husband, and her husband's businesses. Despite numerous requests from his client and the attorneys she retained to finalize the estates of her mother and husband, respondent produced only several years of the most recent personal tax returns. Although he had been notified of pending deadlines associated with the sale and valuation of several of the husband's businesses, at the time the complaint was filed, respondent had not produced any of the business records or the remaining personal records.

{¶ 13} Based upon the foregoing conduct that occurred before February 1, 2007, the board found, and we agree, that he violated DR 1-102(A)(6), 2-110(A)(2) (prohibiting withdrawal from employment without taking steps to protect the client's interests), 7-101(A)(3), and 9-102(B)(4) (requiring prompt delivery to client of papers and funds belonging to the client).

{¶ 14} With respect to respondent's conduct that occurred on and after February 1, 2007, the board found, and we agree, that he violated Prof.Cond.R. 1.4(a)(2) (requiring reasonable consultation with a client about the means by which the client's objectives are to be accomplished), 1.4(a)(4) (requiring prompt response to reasonable requests for information from the client), and 1.15(d) (requiring prompt delivery to the client of any funds or other property that the client is entitled to receive).

*Count Three – Preparation of Client No. 1's Tax Returns*

{¶ 15} Respondent prepared personal income tax returns for client No. 1 and her husband in 1998 and 1999. In each of those years, he determined that they owed no taxes to the city of Columbus and so advised them. But in January 2005, the city of Columbus Division of Income Tax sued client No. 1 and her husband for failing to pay income taxes in those years. As a result of respondent's advice, they incurred interest charges on the unpaid taxes.

{¶ 16} The board found, and we agree, that based upon these facts, respondent violated DR 6-101(A)(3) and 7-101(A)(3).

*Count Four – CPA License Revocation*

{¶ 17} The board found that respondent obtained his Ohio certified public accountant ("CPA") certificate on October 7, 1985, and that on June 11, 2004, the Accountancy Board of Ohio revoked that certificate, upon its determination that he had conducted an audit of the Logan County Red Cross while his license was expired. The board further found that on May 8, 2007, the Bellefontaine Municipal Court found respondent guilty of unlawful accounting practices in violation of R.C. 4701.14(G), a first-degree misdemeanor, upon its determination that respondent had acquired an unrelated public accounting firm and was illegally doing business under the name of that firm using an expired CPA license. Based upon these findings, the board found that respondent's conduct prior to February 1, 2007, violated DR 1-102(A)(3) (forbidding illegal conduct involving

moral turpitude) and 1-102(A)(6) and that his conduct on or after that date violated Prof.Cond.R. 8.4(b) (forbidding acts that reflect adversely on the lawyer's honesty or trustworthiness) and 8.4(h) (forbidding conduct that adversely reflects on the lawyer's fitness to practice law).

{¶ 18} Although it is not clear from the record how relator discovered that respondent's Ohio CPA certificate had been revoked, it appears that in May 2007, a Bellefontaine Municipal Court judge notified Disciplinary Counsel that respondent had been convicted of unlawful accounting practices.

{¶ 19} The record contains a certified copy of the judgment entry of respondent's conviction for unlawful accounting practices in violation of R.C. 4701.14(G), which generally prohibits a business organization from holding itself out to the public as being composed of or employing "accountants" or "auditors" by use of either or both of those words on any sign, card, or letterhead, in any advertisement or directory, or otherwise, unless the majority of its partners or owners hold a CPA certificate. However, that judgment entry does not state any of the facts supporting respondent's conviction or the facts leading to the revocation of his CPA certificate.

{¶ 20} At his September 24, 2007 deposition, respondent testified that he obtained his CPA license in 1984 and that it was revoked in 2002. He further testified that sometime after he lost his CPA certificate, he closed a branch accounting office that he had acquired in Bellefontaine but neglected to remove the signage. He explained that that failure resulted in the charge of unlawful accounting practices, which he believed to be a strict-liability offense, and to which he pleaded no contest.

{¶ 21} In light of respondent's testimony regarding the circumstances of his conviction and relator's failure to submit any sworn or certified evidence to prove the facts underlying either the license revocation or the conviction for unlawful accounting practices, as required by Gov.Bar R. V(6)(F)(1)(b), we

cannot say that clear and convincing evidence supports the board's findings with respect to this count. See Gov.Bar R. V(6)(J). We therefore reject the board's factual findings and conclusions of law with respect to count four. Ordinarily, we would remand this count to the board for further proceedings. See *Dayton Bar Assn. v. Sebree*, 104 Ohio St.3d 448, 2004-Ohio-6560, 820 N.E.2d 318. However, because we are imposing the sanction of permanent disbarment for the remaining counts against respondent, we hereby dismiss count four.

*Count Five – Defalcation from Client No. 2's Trust Fund*

{¶ 22} Respondent represented client No. 2, who was engaged in business under a company name, for a number of years. In early 2008, as the result of a business deal, respondent received in trust $80,000 belonging to his client. In February 2008, respondent contacted his client to ask whether he could borrow $30,000 of those trust funds. When the client told respondent that he would think about a loan, respondent revealed that he had already taken the $30,000 out of the trust without the client's authorization and had used it for his personal benefit.

{¶ 23} Respondent pledged to return the money by the end of February, and from May to August 2008, he made payments to his client totaling $9,000. When the client pressed him for the remainder of the money, respondent sent a check for $22,853.82, but the bank returned it for insufficient funds. After respondent ignored his client's letter demanding that he make good on the check, the client filed a report with the Columbus Police Department.

{¶ 24} Respondent did not provide his client with any written evidence of the "loan." He did not advise his client that there was a conflict of interest regarding the lawyer/client relationship, nor did he advise him to seek independent counsel for advice regarding the "loan." At the time relator filed its complaint, respondent had not personally paid any of the balance owing to his client, although an unidentified business associate of respondent had paid a substantial portion of the obligation.

{¶ 25} We adopt these findings of fact and agree with the board's determination that in handling client No. 2's matter, respondent violated Prof.Cond.R. 1.4(a)(2), 1.7(b) (prohibiting acceptance or continuation of representation of a client creating a conflict of interest), 1.8(a) (prohibiting entering into a business transaction with a client), 1.15(a) (forbidding commingling), 1.15(d), 8.4(b), 8.4(c) (forbidding conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(h).

*Count Six – Defalcation from Client No. 3's Family and Client No. 3's Business*

{¶ 26} Respondent represented a trucking company owned by client No. 3's family that does business in multiple states. Respondent held payroll funds and other assets belonging to the business in his trust account and was responsible for disbursing those assets to various taxing authorities for employment taxes and other obligations, including but not limited to the Internal Revenue Service and the Bureau of Workers' Compensation. From 2005 through 2008, respondent failed to hold some or all of those funds in trust and failed to disburse those funds to various taxing authorities as directed by his clients, while falsely leading them to believe that he had properly held and disbursed the funds.

{¶ 27} As a result of respondent's actions, the company's workers' compensation premiums have increased, and the company accumulated back taxes, penalties, and late fees in excess of $100,000. Respondent has failed to account to his clients for funds he received or disbursed on their behalf and has purloined and used some or all of those funds for his own purposes without informing his clients. He has not responded to his clients' numerous phone calls and has not been at his office when they have attempted to retrieve their documents. As a result of respondent's actions, client No. 3 has filed a criminal complaint with the Columbus Police Department.

{¶ 28} Based upon these findings of fact, the board determined, and we agree, that respondent's conduct before February 1, 2007, violated DR 1-102(A)(3), 1-102(A)(6), 6-101(A)(3), 7-101(A)(3), and 9-102(B)(4) .

{¶ 29} With regard to respondent's conduct occurring on and after February 1, 2007, the board determined, and we agree, that respondent violated Prof.Cond.R. 1.4(a)(2), 1.15(a)(2) (requiring specified records for each client on whose behalf funds are held), 1.15(d), 8.4(b), 8.4(c), and 8.4(h).

*Count Seven – Defalcation from Client No. 4 and Client No. 4's Business*

{¶ 30} In his representation of a business owned by client No. 4, respondent was entrusted to hold the business's payroll funds in trust and disburse them to various taxing authorities for employment and other tax obligations. However, from 2004 through 2008, respondent failed to hold some or all of those funds in trust and failed to disburse the funds as directed by his clients. He falsely led his clients to believe that he had properly held and disbursed the funds. Respondent also made false statements inflating his client's payroll obligations. After receiving the inflated amounts and making some legitimate distributions, respondent retained the excess money – more than $52,000 – for himself. As a result of respondent's failure to properly file and pay these tax obligations, his client faces liability for $340,000 in back taxes, penalties, and interest charges.

{¶ 31} Respondent ignored client No. 4's numerous attempts to contact him, made no accounting to his clients regarding the funds he received on their behalf or the disposition of those funds, and has failed to return documents sent to him by his clients and governmental authorities on their behalf. Consequently, client No. 4 has filed a criminal complaint against respondent.

{¶ 32} In sum, respondent accepted client funds in trust, failed to disburse those funds as directed by his clients, falsely led his clients to believe that he had properly held and disbursed those funds, falsely inflated his clients' payroll obligations and retained the excess money, failed to account to his clients for the

funds received, held, and disbursed on their behalf, and failed to return client documents. Therefore, the board found, and we agree, that his conduct before February 1, 2007, violated DR 1-102(A)(3), 1-102(A)(6), 6-101(A)(3), 7-101(A)(3), and 9-102(B)(4).

{¶ 33} With respect to his conduct on and after February 1, 2007, the board found, and we agree, that respondent violated Prof.Cond.R. 1.4(A)(2), 1.15(a)(2), 1.15(d), 8.4(b), 8.4(c), and 8.4(h).

*Count Eight – Abandonment of Office and Clients*

{¶ 34} Prior to October 2008, respondent abandoned his law office. Since that time, respondent has not regularly attended to his mail, responded to calls or other communications from clients, or otherwise taken steps to protect the interests of his clients.

{¶ 35} Respondent gave his landlord a check for $1,300 representing past-due rent, but the bank returned the check for insufficient funds. Despite respondent's assurances that he would make the check good by October 1, 2008, he did not do so. In January 2009, respondent paid his landlord to gain access to his office for a short period of time. When that time expired, he presented another check for continued access, but that check was returned for insufficient funds. Respondent has been locked out of his office since that time.

{¶ 36} In abandoning his office, respondent has left behind a massive number of files and piles of unfiled documents and correspondence, as well as computers, copiers, printers, law books, and personal effects. Respondent has not provided any means for clients or others to receive information about legal matters entrusted to him. Throughout these disciplinary proceedings, the address listed in respondent's registration with the Supreme Court of Ohio has been that of his abandoned office.

{¶ 37} Based upon the foregoing findings of fact, the board determined, and we agree, that respondent violated Prof.Cond.R. 1.4(a)(2), 1.15(d), 8.4(b), and

8.4(h) and Gov.Bar R. VI(1)(D) (requiring attorneys to keep the Supreme Court Registration Office apprised of their current addresses).

*Count Nine – Failure to Cooperate in Investigation and Provide Records*

{¶ 38} At each step of the disciplinary process, relator has given respondent notices of all grievances by certified and regular mail to his registration address and to other address that relator discovered during the disciplinary proceedings. Relator has demanded written responses to each of these grievances. However, the only written responses relator received were a short letter dated March 14, 2007, that superficially addressed client No. 1's grievances and a letter dated September 3, 2007, briefly discussing the matter of respondent's CPA license.

{¶ 39} In September 2007, relator served respondent with a subpoena duces tecum for a deposition regarding the client No. 1 and CPA license matters. During that deposition, respondent promised to provide certain documents to relator. However, respondent has never produced all of the promised documents.

{¶ 40} Relator attempted to serve the complaint, amended complaint, and second amended complaint on respondent by certified and regular mail at numerous addresses and ultimately served them on the clerk of this court in accordance with Gov.Bar R. V(11)(B). Respondent failed to file an answer.

{¶ 41} In December 2008, before filing the amended complaint, relator served a second subpoena duces tecum on respondent for a January 7, 2009 deposition. Despite having had at least two weeks' notice of that deposition, respondent filed a motion for a stay the day before the deposition. Because the board did not rule upon the motion before the appointed time for the deposition, the deposition convened as scheduled. Respondent appeared and gave some information about his personal and office situation as well as the whereabouts of various files and records. He also promised to provide items that relator demanded in the subpoena duces tecum.

**{¶ 42}** When respondent indicated that he wished to obtain counsel and continue the deposition to early February, relator agreed. Relator also agreed to a later continuance of the deposition until April 7, 2009, but respondent failed to appear. Relator made a record of his nonappearance.

**{¶ 43}** Based upon the foregoing, the board found, and we agree, that respondent violated Prof.Cond.R. 8.1(b) (prohibiting failure to disclose a material fact or knowing failure to respond in connection with a disciplinary matter) and Gov.Bar R. V(4)(G) (imposing a duty to cooperate in a disciplinary investigation).

## Sanction

**{¶ 44}** The relator, master commissioner, and board have all recommended the sanction of permanent disbarment. When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. We are ever mindful that the primary purpose of the disciplinary process is not to punish the offender but to protect the public from lawyers who are unworthy of the trust and confidence essential to the attorney-client relationship. *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368.

**{¶ 45}** Here, the board found that there are no known mitigating factors and that at least six of the nine aggravating factors set forth in BCGD Proc.Reg. 10(B)(1) are present, including that respondent engaged in a pattern of misconduct involving multiple offenses and caused harm to his clients. BCGD Proc.Reg. 10(B)(1)(c), (d), and (h). Respondent failed to cooperate in the disciplinary process, refused to acknowledge the wrongful nature of his conduct,

and failed to make restitution to his victims. BCGD Proc.Reg. 10(B)(1)(e), (g), and (i).

{¶ 46} Respondent has neglected client matters, failed to seek the lawful objectives of his clients, failed to consult with and respond to reasonable requests for information from his clients, and failed to promptly deliver client funds and other property that his clients were entitled to receive. He has engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation and misappropriated substantial funds from multiple clients. Respondent's repeated dishonesty and failure to cooperate in the disciplinary process demonstrate that he is unfit to practice law. The presumptive disciplinary sanction for respondent's conduct is disbarment, and this sanction is appropriate here. See, e.g., *Disciplinary Counsel v. Jones*, 112 Ohio St.3d 46, 2006-Ohio-6367, 857 N.E.2d 1221, ¶ 22 (presumptive sanction for pattern of misconduct involving dishonesty, misappropriation, and lack of cooperation in disciplinary proceedings is disbarment); *Lorain Cty. Bar Assn. v. Fernandez*, 99 Ohio St.3d 426, 2003-Ohio-4078, 793 N.E.2d 434, ¶ 9 ("The presumptive sanction for misappropriation of client funds is disbarment"); *Cincinnati Bar Assn. v. Weaver*, 102 Ohio St.3d 264, 2004-Ohio-2683, 809 N.E.2d 1113, ¶ 15 (an attorney's "persistent neglect of his clients' interests, failure to perform as promised, failures to account for his clients' money, and lack of any participation in the disciplinary proceedings" warrant disbarment); *Disciplinary Counsel v. Wherry* (2000), 87 Ohio St.3d 584, 587, 722 N.E.2d 515 ("The appropriate sanction when a lawyer knowingly converts funds for the lawyer's benefit is disbarment"). Therefore, we accept the board's recommendation. Accordingly, respondent is hereby permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J.,[1] and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Tyack, Blackmore & Liston Co., L.P.A., and Margaret L. Blackmore;  and Bruce Campbell, Bar Counsel, and A. Alysha Clous, Assistant Bar Counsel, for relator.

_____

---

1. The late Chief Justice Thomas J. Moyer participated in the deliberations in, and the final resolution of, this case prior to his death.