CLEVELAND METROPOLITAN BAR ASSOCIATION *v*. MISHLER.

[Cite as *Cleveland Metro. Bar Assn. v. Mishler*,

127 Ohio St.3d 336, 2010-Ohio-5987.]

*Attorneys — Misconduct — Multiple violations of the Disciplinary Rules and the*

*Rules of Professional Conduct — Permanent disbarment.*

(No. 2010-0908 — Submitted July 6, 2010 — Decided December 14, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 08-087.

_____

**Per Curiam**.

{¶ 1}   Respondent, Howard Mishler, Attorney Registration No. 0007281, whose last registered address was in Westlake, Ohio, was admitted to the practice of law in Ohio in 1973.  On April 23, 2008, he was suspended from the practice of law in Ohio for two years, with one year conditionally stayed, based on his misconduct in another matter.  *Cleveland Bar Assn. v. Mishler*, 118 Ohio St. 3d 109, 2008-Ohio-1810, 886 N.E.2d 818.  On November 3, 2009, we suspended respondent for failing to file a Certificate of Registration as an attorney.  *In re Attorney Registration Suspension,* 123 Ohio St.3d 1475, 2009-Ohio-5786, 915 N.E.2d 1256.  On October 21, 2010, we suspended respondent for an interim period after he was convicted of a felony.  *In re Mishler*, 126 Ohio St.3d 1611, 2010-Ohio-5111, 935 N.E.2d 425.

{¶ 2}   Relator, Cleveland Metropolitan Bar Association, filed a complaint against respondent charging him with numerous violations of the Code of

Professional Responsibility and the Rules of Professional Conduct[1] for his conduct in representing several clients.

**{¶ 3}** A panel of the Board of Commissioners on Grievances and Discipline heard the case and found that respondent had committed over 50 violations of the Code of Professional Responsibility and the Rules of Professional Conduct.

**{¶ 4}** The panel recommended that respondent be disbarred. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. Neither party objected to the board report. We accept the board's findings of fact, conclusions of law, and recommended sanction. Accordingly, we permanently disbar respondent from the practice of law in Ohio.

## Misconduct

### Count One

**{¶ 5}** In 2003, a woman ("the daughter") and her husband retained respondent to perform legal services associated with her deceased father's estate on behalf of her two adult siblings and herself. Respondent's work in this matter involved (1) the probate estate, which consisted primarily of funds from the sale of decedent's house, (2) an inter vivos trust established by the decedent, and (3) two joint-and-survivorship bank accounts that the decedent held with the daughter. Although there was never a written fee agreement between respondent and any of the siblings, respondent received over $60,000 in fees and other money that was not accounted for.

**{¶ 6}** Respondent sought and received $17,000 in fees from the daughter and her husband in April 2003; he sought and received an additional $15,000 from them two months later. In April 2004, respondent requested and received

---

1. On February 1, 2007, the Rules of Professional Conduct became effective, replacing the Code of Professional Responsibility in Ohio. Respondent's conduct that occurred before that time falls under the Code of Professional Responsibility, and any conduct after February 1, 2007, falls under the Rules of Professional Conduct.

$7,100 from the daughter to pay taxes, but there is no evidence that he ever prepared a tax return for the daughter or the estate. He also obtained a check for $4,135 for a bond from the daughter but never explained why it was needed. Despite requests for him to do so, respondent never provided a complete accounting of all the decedent's funds to any of the heirs.

{¶ 7} Despite the fact that the decedent had executed a will, respondent filed an application to administer the estate on behalf of the daughter that falsely asserted that the decedent had died intestate. In 2004, the probate court approved an additional $3,000 in fees for respondent's work on the estate.

{¶ 8} The decedent's inter vivos trust was clear in its instructions that the trust assets were to be distributed to the siblings upon notification to the bank of the decedent's death. There is no evidence that respondent attempted to notify the bank of the decedent's death. He decided to allow the bank "to continue to perpetuate waste" on the trust, as he characterized it, for several years so the clients could force a dissolution through a lawsuit. In 2006, three years after the decedent's death, respondent filed a complaint against the bank, claiming that it had managed and administered the trust in a negligent and reckless manner. Respondent then negotiated a settlement agreement with the bank for the release of the money in the trust account but did not advise his clients of the negotiations until after he had made an agreement with the bank. In late 2006, respondent received $160,687.74 from the bank in fulfillment of the settlement.

{¶ 9} Respondent did not distribute the funds, however, for over eight months. During those eight months, one of the heirs filed a grievance against him and another heir sent several letters asking that the money be distributed. Before distributing the proceeds, respondent first took $15,000 out of the settlement proceeds for attorney fees. He then sent checks representing one-third of the net settlement proceeds to two of the heirs, but one check bounced. Respondent later

reimbursed that heir. The daughter — the third heir — did not receive her distribution from the trust until October 2007.

{¶ 10} Upon her father's death, the daughter gained legal control over the joint-and-survivorship bank accounts, containing approximately $114,000. Respondent, however, convinced her to give the money to him. He claimed that he needed to place the money in an escrow account to keep it separate from the estate and the trust. He advised the daughter that she would go to jail if she attempted to disburse the money in the joint accounts to her siblings. Both the daughter and the son requested that the money be returned to the heirs, but respondent failed to return all the money until November 2008.

{¶ 11} Beginning in September 2008, after the filing of the grievances, respondent sent the daughter three checks totaling $117,702.74. The final check came with a letter saying that although he had decided to return the money as mitigation, respondent believed he could have made a quantum meruit argument to retain the funds for his services rendered. Above the endorsement line on the back of the last check sent to the daughter, respondent had added language stating that the check was a full and final settlement of all claims the daughter and her husband may have had against him. Because the daughter had died in early 2008, respondent reissued the last check in the name of the daughter's husband but again placed the full-and-final-settlement language above the endorsement line. Respondent did not explain the meaning of the language to the daughter's husband and did not encourage him to seek independent counsel before signing it.

{¶ 12} Throughout his work for the daughter and her siblings, respondent overcomplicated basic legal issues and then charged a hefty and unexplained fee for the unnecessary work he created. Respondent never gave his client an accounting of the fees or of the assets that he handled. Respondent was unable to account to relator for the fees he charged and the assets he handled, or for the amount of time that he took to distribute the assets. If respondent had simply

4

probated the decedent's will and notified the bank to disburse the trust assets as the trust instructed, the clients would have saved thousands of dollars and years of stress. Instead, the daughter died without ever seeing this matter finalized.

**{¶ 13}** The panel and the board found that respondent's conduct violated DR 1-102(A)(4) and Prof.Cond.R. 8.4(c) (both prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), DR 1-102(A)(5) and Prof.Cond.R. 8.4(d) (both prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), DR 1-102(A)(6) and Prof.Cond.R. 8.4(h) (both prohibiting conduct that adversely reflects on the lawyer's fitness to practice law), DR 2-106(A) and Prof.Cond.R. 1.5(a) (both prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee), DR 6-101(A)(3) (prohibiting neglect of an entrusted legal matter), 7-101(A)(1) (prohibiting a lawyer from intentionally failing to seek the lawful objectives of his client), 7-101(A)(3) (prohibiting a lawyer from intentionally prejudicing or damaging a client during the course of the professional relationship), 7-102(A)(3) (prohibiting a lawyer from concealing or knowingly failing to disclose that which the law requires him to reveal), 7-102(A)(5) (prohibiting a lawyer from knowingly making a false statement of law or fact), 9-102(B)(1) (requiring a lawyer to promptly notify a client of the receipt of his or her funds or other property), 9-102(B)(3) (requiring a lawyer to maintain records of funds received from a client and to give an accounting of those funds to the client), and 9-102(B)(4) (requiring a lawyer to promptly pay or deliver funds and property to which a client is entitled).

**{¶ 14}** The panel and board also found that his conduct violated Prof.Cond.R. 1.8(h)(1) (prohibiting a lawyer from attempting to limit the lawyer's liability for malpractice unless the client has independent representation) and 1.8(h)(2) (prohibiting a lawyer from settling a claim with a client unless the settlement is fair, the client is advised in writing to seek independent counsel, and

the client gives informed consent). We accept these findings of fact and misconduct.

**{¶ 15}** In accordance with the panel's and the board's recommendations, we dismiss the alleged violations of DR 5-101(A)(1) (prohibiting a lawyer from accepting employment if his professional judgment will be affected by his personal interests, unless the client gives informed consent), 7-102(A)(4) (prohibiting a lawyer from knowingly using perjured testimony or false evidence), and 7-102(A)(7) (prohibiting a lawyer from counseling or assisting his client in conduct the lawyer knows is illegal or fraudulent) because they were not proved by clear and convincing evidence.

**{¶ 16}** Also in accordance with the panel's and the board's recommendations, we dismiss the charges of violating Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.7 (prohibiting a lawyer from representing clients with conflicting interests without each client's informed written consent), and 1.15(d) (requiring a lawyer to promptly deliver funds or other property that the client is entitled to receive) because the conduct for these violations was part of continuing misconduct that had already been punished under the Code of Professional Responsibility. See *Disciplinary Counsel v. Freeman*, 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, ¶ 1, fn. 1**.**

**{¶ 17}** Finally, we also accept the recommendation that we dismiss the charges of violating DR 1-102(A)(1) (prohibiting a lawyer from violating a disciplinary rule) and Prof.Cond.R. 8.4(a) (prohibiting a lawyer from violating or attempting to violate the Ohio Rules of Professional Conduct) because they are redundant.

*Count Two*

**{¶ 18}** Another client retained respondent to work on an employment-discrimination matter in April 2005. Although the client testified that she had signed a written contract when she hired respondent, respondent never gave her a copy of the agreement despite multiple requests. He also was unable to produce a copy at the hearing. The client gave respondent $8,500 for fees and costs.

**{¶ 19}** In July 2005, respondent filed a complaint in federal court on behalf of the client. The case was settled for $12,000 in June 2006. When he received the settlement proceeds in May 2007, respondent claimed $5,000 in additional fees but did not send the remaining money to the client. After she repeatedly asked for her money, respondent sent three checks, totaling $10,200. The last check was for $4,800 and was sent to the client in September 2007. Respondent typed the following over the endorsement line of that check: "In full and final settlement of all claims arising out of or in any way concerned with Case No. 1:05-CV-1774." There is no evidence that respondent advised the client in writing to retain independent counsel to review this supposed settlement. The client also tried several times to contact the respondent to ask for an accounting of her case, but she has never received one.

**{¶ 20}** The panel and the board concluded, and we agree, that respondent's conduct in this matter violated Prof.Cond.R. 1.8(h)(1) and (2) and 1.15(d).

**{¶ 21}** In accordance with the panel's and board's recommendation, we dismiss the charge of violating DR 6-102 (prohibiting a lawyer from attempting to exonerate himself from or limit his liability to a client for professional malpractice) because all of respondent's misconduct occurred after the Ohio Rules of Professional Conduct became effective.

*Count Three*

**{¶ 22}** In Count Three, relator questioned seven checks drawn on respondent's Interest on Lawyer Trust Account ("IOLTA") account, all of which

were made payable to his wife. Respondent explained that his wife, who was not an employee of his firm, held a power of attorney ("POA") to sign checks for him. The wife had used the POA but had accidentally failed to designate him as the payee even though the checks were payment for services he had rendered.

{¶ 23} In accordance with the recommendations of the panel and the board, we dismiss the charges in this count of violating DR 9-102(B)(3) (requiring a lawyer to maintain records of all client funds in his possession and to render to the client appropriate accounts regarding them) and 9-102(E) (requiring a lawyer to maintain funds of clients in an interest-bearing trust account in an eligible institution) because they were not proved by clear and convincing evidence.

*Count Four*

{¶ 24} Respondent was hired to handle litigation on behalf of a client whose pension benefits were decreased. The client initially had received a monthly benefit of approximately $2,800. When the client's former employer went bankrupt, the Pension Benefit Guaranty Corporation ("PBGC") took over the employer's pension plan and reduced the man's pension to approximately $1,400.

{¶ 25} The man and his wife retained respondent to help restore the pension benefits to their previous level, and respondent agreed to do so for a flat fee of $7,500. There was no written fee arrangement. Respondent told the client that an administrative appeal would be a "waste of time" and instead encouraged him to file a lawsuit. In 2003, the bankruptcy court granted respondent relief from the bankruptcy stay so he could proceed with a lawsuit.

{¶ 26} PBGC, without explanation, then increased the client's pension to approximately $2,000 per month. Respondent told the client that if he accepted the increase, he would forfeit his right to file a lawsuit. Respondent asked the client to endorse his pension checks to respondent, who in turn wrote a check to

the client for the lower pension amount. Respondent said that he would deposit the difference in his IOLTA account pending resolution of the litigation. This exchange happened every month from July 2003 until September 2008.

{¶ 27} When respondent finally filed a lawsuit against PBGC in 2006, he included other plaintiffs without disclosing that fact to the client. In 2007, the federal court dismissed the case without prejudice for the plaintiff's failure to exhaust administrative remedies. Respondent did not notify the client of the dismissal and appealed the case to the Sixth Circuit Court of Appeals without the client's consent or knowledge.

{¶ 28} The client then received a letter from respondent informing him of a mediation conference that would occur in June 2007. The client thought that the conference would be to discuss a settlement in the trial court, but he learned during the conference that his case had been dismissed by the trial court and was on appeal. The client told respondent not to pursue any further appeal because he could not afford it.

{¶ 29} Against his client's wishes, respondent continued the appeal in the Sixth Circuit Court of Appeals, later telling the client that he would pay for it himself because he believed in the case. Respondent refused to return the money he held in escrow from the pension-check exchange. On April 16, 2008, the Sixth Circuit affirmed the dismissal of the client's case, stating that the appeal bordered on "the frivolous and sanctionable" and that respondent's brief was "largely nonsensical." Respondent did not tell the client that a decision had been issued in the appeal. Nor did respondent tell the client that this court had suspended his license to practice law in Ohio effective April 23, 2008.

{¶ 30} In August 2008, when the client met with respondent to exchange checks for the final time, respondent behaved strangely. The client became disturbed and asked again for the return of the money supposedly held in escrow, but respondent did not return it. After the meeting, the client conducted research

and discovered that respondent had been suspended from the practice of law and that the Sixth Circuit had affirmed the dismissal of his lawsuit. The client filed a grievance against respondent; the client has never received the money from the check-exchange scheme, which the client estimated to be at least $36,783.01.

{¶ 31} The panel and the board found that respondent's conduct violated DR 1-102(A)(4), (5), and (6), 6-101(A)(3), 7-101(A)(3), and 9-102(B)(3) and (4) and Prof.Cond.R. 1.1, 1.3, 1.4(a)(3), 1.5(a) and (b) (requiring an attorney to communicate the nature and scope of the representation and the basis or rate of the fee to the client), and 8.4 (c), (d), and (h). However, both the panel and the board recommend that the alleged violations of DR 1-102(A)(1) and Prof.Cond.R. 8.4(a) be dismissed because they are redundant and have not been proved by clear and convincing evidence, and that the alleged violation of Prof.Cond.R. 1.15(a)(2) (requiring a lawyer to maintain a record for each client whose funds are held) be dismissed because the violation was a continuation of misconduct already punished under the Code of Professional Responsibility. See *Freeman*, 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, ¶ 1, fn. 1. We accept these findings of fact and misconduct and we also dismiss the alleged violations of DR 1-102(A)(1) and Prof.Cond.R. 8.4(a) and 1.15(a)(2).

*Count Five*

{¶ 32} In 2007, another client hired respondent to bring a lawsuit for what he understood to be a flat fee of $2,500. Although the respondent later characterized this amount as a retainer, there was never a written fee agreement. After the respondent filed the lawsuit, the client paid respondent an additional $5,500 to take the depositions of two defendants and to obtain a copy of his own deposition transcript. However, respondent never performed any of these services.

{¶ 33} In May 2008, respondent notified the client that he had been suspended from the practice of law and that he would send an itemized statement

of the client's case and account along with the case file. Respondent never provided the promised accounting and has not returned the $5,500 he received for services he did not render. Without the refund, the client could not afford to hire another attorney and had to proceed pro se.

{¶ 34} Based upon these facts, the panel and the board concluded that respondent's conduct violated Prof.Cond.R. 1.5(a) and (b), 1.15(a)(2), and 8.4(a), (c), (d), and (h). They each recommend that we dismiss the charges of Prof.Cond.R. 1.4(a)(3) and Gov.Bar R. V(9) (procedures for attorneys on probation) because those charges were not proved by clear and convincing evidence. We accept these findings of fact and misconduct and dismiss the two charges.

*Count Six*

{¶ 35} A mother and father, on their own behalf and on the behalf of their minor child, retained respondent to pursue a medical-malpractice action. Although there was not a written fee agreement, the clients assumed, based on their past experience, that the fee would be one-third of any judgment.

{¶ 36} In 2001, respondent filed a complaint alleging medical negligence. The case was settled in 2002, and the clients signed a settlement agreement for $10,500.

{¶ 37} Respondent did not explain the details of the settlement to the clients. They later learned that he had falsely represented to the probate court, in an application to settle the minor's claim, that part of the money was to pay for unpaid medical expenses. The probate court approved $5,000 as payment for these allegedly unreimbursed medical expenses, but respondent did not forward this money to the clients. The probate court also ordered that $1,000 be set aside for the child and not be released until the child reached the age of majority. Respondent did not advise the clients about these funds and named himself as custodian of the account holding the funds. Respondent later withdrew the

$1,000, plus the interest, from the bank account without obtaining court permission or notifying the parents. Finally, respondent claimed attorney fees of $3,500 from the settlement. The clients thus received only $1,000 of the $10,500 settlement.

{¶ 38} After they read in the newspaper that respondent had been suspended from the practice of law, the clients researched their case and learned about the $1,000 set aside for their son and the $5,000 set aside for unreimbursed medical expenses. When they contacted respondent, he told them that there was no money and that he needed time to discuss repayment. He has not returned any of the $6,000 to the clients.

{¶ 39} The panel and the board concluded, and we agree, that respondent's conduct violated DR 1-102(A)(4), (5), and (6), 6-101(A)(3), 7-102(A)(3) and (5), and 9-102(B)(1), (3), and (4) and Prof.Cond.R. 1.1, 1.3, 1.4(a)(3), and 8.4(c), (d), and (h). We also accept the conclusions that the alleged violations of DR 7-102(A)(4) and (7) have not been proved by clear and convincing evidence and that the alleged violation of Prof.Cond.R. 8.4(a) is redundant of other charges and has not been proved by clear and convincing evidence.

{¶ 40} We also dismiss the charge of violating Prof.Cond.R. 1.15(a)(2), because the violation was a continuation of misconduct already punished under the Code of Professional Responsibility. See *Freeman*, 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, ¶ 1, fn. 1.

*Count Seven*

{¶ 41} In 2007, respondent filed an employment-discrimination suit in federal court for a husband and his wife. In 2008, the wife called the presiding judge to express her concerns about the handling of the case and her fear that respondent might settle the case for less than the $15,000 that the clients had already paid him.

**{¶ 42}** The judge then held a status conference, during which respondent told the judge that he did not have a written fee agreement with the client. Respondent testified that he had already received a $5,000 retainer and $10,000 for costs and that he was entitled to a contingency fee of one-third of the proceeds from the discrimination suit. At the disciplinary hearing, respondent tried to explain away the numerous fees by claiming that he had represented the client in two different cases. However, the federal judge wrote a letter to relator questioning the fee arrangement, pointing out the confusion the client had shown regarding the fees and questioning whether respondent had adequately evaluated the case.

**{¶ 43}** The panel and the board found, and we agree, that respondent's conduct violated Prof.Cond.R. 1.5(b) and (c) (requiring a lawyer to have contingency-fee agreements in writing and signed by client).

**{¶ 44}** In accordance with the panel's and the board's recommendations, we dismiss the charges of violating Prof.Cond.R. 1.5(a), 8.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact in connection with a disciplinary matter), 8.4(c), and 8.4(h) because they were not proved by clear and convincing evidence.

### Sanction

**{¶ 45}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Because each disciplinary

13

case is unique, we are not limited to the factors specified in the rule but may take into account "all relevant factors" in determining what sanction to impose. BCGD Proc.Reg. 10(B).

{¶ 46} After reviewing all the counts brought against respondent, and after considering the previous sanctions we have imposed upon him, it is clear that respondent has engaged in a pattern of misconduct involving dishonesty, neglect, incompetence, and mismanagement of client funds. His handling of his clients' cases resulted in years of delay, unnecessary work and fees, and general client confusion. Because respondent so rarely explained his fee arrangements, his clients were often left wondering where their money was going and what the hefty fees were accomplishing. Many of his clients have never received answers to those questions because he did not provide any final accounting of his services or fees. The emotional and financial harm respondent has caused his clients was made clear when his clients testified against him at the disciplinary hearing; several of those witnesses traveled a significant distance to do so.

{¶ 47} After the hearing concluded, respondent filed a motion that attempted to change his testimony and to add or amend exhibits. Much of respondent's testimony, and the motion that followed it, was contradictory. The panel characterized respondent's statements as "inconsistent, contradictory flapdoodle." The panel found that respondent was argumentative, that his former clients were emotionally and visibly upset when testifying against respondent, and that respondent has not learned anything from his misconduct.

{¶ 48} Therefore, the court finds the following aggravating factors in relation to respondent's conduct: a prior disciplinary offense, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, lack of cooperation in the disciplinary process, submission of false evidence, false statements or other deceptive practices during the disciplinary process, refusal to acknowledge the wrongful nature of the conduct, the vulnerability and resulting harm to victims,

and the failure to make restitution, BCGD Proc.Reg. 10(B)(1)(a), (b), (c), (d), (e), (f), (g), (h), and (i).

{¶ 49} There were no mitigating factors to consider in this case.

{¶ 50} Respondent's pattern of neglect and dishonest behavior, along with his misappropriation of client funds, failure to account for client funds, and failure to return client funds promptly, creates a presumption that disbarment is proper in this case. See, e.g., *Columbus Bar Assn. v. Kiesling*, 125 Ohio St.3d 36, 2010-Ohio-1555, 925 N.E.2d 970, ¶ 46. Because no evidence was presented to rebut that presumption, disbarment is the proper sanction for respondent's misconduct, which has resulted in over 50 ethical violations in this case alone and has caused substantial financial harm to multiple clients.

{¶ 51} Respondent is therefore disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

BROWN, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Tucker, Ellis & West, L.L.P., Robert J. Hanna, Benjamin C. Sassé, and Karen E. Ross, for relator.

Howard V. Mishler, pro se.

_____