COLUMBUS BAR ASSOCIATION *v.* CHASSER.

[Cite as *Columbus Bar Assn. v. Chasser*, 124 Ohio St.3d 578, 2010-Ohio-956.]

*Attorneys at law — Multiple Disciplinary Rule violations, including dishonesty, fraud, deceit, or misrepresentation — Indefinite license suspension.*

(No. 2009-1533 — Submitted December 1, 2009 — Decided March 18, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 08-045.

_____

**Per Curiam.**

{¶ 1}  Respondent, Timothy G. Chasser of Columbus, Ohio, Attorney Registration No. 0016847, was admitted to the practice of law in Ohio in 1976. The Board of Commissioners on Grievances and Discipline recommends that we indefinitely suspend his license to practice law, based on findings that he improperly obtained a referral from and divided fees with another attorney, made misrepresentations to a client, conducted himself in a manner adversely reflecting on his fitness to practice law, intentionally failed to carry out a contract of employment, failed to keep proper records of funds and to render accounts, retained property belonging to a client, commingled client and personal funds, intentionally damaged a client during the course of the professional relationship, and failed to cooperate with the investigation of his misconduct.  We agree that respondent committed professional misconduct as found by the board, and we further agree that an indefinite suspension is the appropriate sanction.

**Facts and Procedural History**

{¶ 2}  Respondent is a sole practitioner handling workers' compensation, Social Security, and personal-injury claims.  In July 1999, he rented office space in Hilliard, Ohio, from attorney James Sullivan, whose practice focused on

workers' compensation. At that time, Sullivan represented Robert Lewis on a workers' compensation claim arising from injuries suffered in an automobile accident during the course of Lewis's employment. Because Lewis also had a personal-injury claim against the driver, Sullivan referred Lewis to respondent.

{¶ 3} Respondent agreed to represent Lewis on a contingent-fee basis, with respondent to receive a fee of 33 1/3 percent of any recovery if Lewis settled the case and a fee of 40 percent of the recovery if the case proceeded to trial. Although Sullivan allegedly served as co-counsel, the contingent-fee agreement did not indicate that Sullivan would do so or that Sullivan would receive any attorney fees for the personal-injury claim.

{¶ 4} On November 12, 1999, respondent filed a complaint on Lewis's behalf, and the case settled for $95,000 before trial. Lewis further agreed to settle the BWC's subrogation claim for $30,000. Sullivan's only active participation in the case involved providing respondent with the materials he had prepared and assembled during the course of Lewis's workers' compensation claim.

{¶ 5} Respondent prepared a distribution sheet dated February 21, 2001, reflecting the $95,000 settlement and showing deductions of $31,666.67 for attorney fees, $30,000 for the subrogation payment to the BWC, $8,176.19 for deposition charges, and $628.81 for miscellaneous costs, including copies, office supplies, and parking expenses. The distribution sheet also indicated that respondent had shared $10,555.55 of the attorney fees with Sullivan. For his recovery in the case, Lewis received $24,528.33. Thereafter, respondent did not pay the $30,000 that Lewis owed the BWC, but instead transferred those funds from his trust account to his office operating account.

{¶ 6} When Lewis later questioned respondent about the deposition charges, respondent claimed to have deposed Lewis's family doctor, among others. However, Lewis discovered that respondent had not deposed his doctor

2

and disputed that charge, but could not get respondent to return his phone calls. In fact, respondent had not taken any depositions.

{¶ 7}  Without further discussion, Lewis received a revised distribution sheet dated October 2, 2001, together with a check from respondent.  Respondent had removed the deposition charges of $8,176.19, indicated a balance due to Lewis of $1,842.86, and added $6,333.33 to his attorney fees, which thus went from 33 1/3 percent to 40 percent of the recovery.  Although the distribution sheet indicated that Sullivan had received an additional $2,111.11 as his third of the additional attorney fees, respondent did not forward any money to Sullivan.

{¶ 8}  Almost five years later, in 2006, Lewis read a newspaper article about a class-action lawsuit against the BWC that had resulted in the reimbursement of money that it had collected pursuant to the workers' compensation subrogation statute.  Lewis called respondent to inquire about when the BWC would reimburse the $30,000 he had paid in subrogation, but respondent did not return his calls.  Lewis contacted another attorney and discovered that respondent had never paid the $30,000 to the BWC.

{¶ 9}  Because respondent would not contact him, Lewis filed a grievance with relator, Columbus Bar Association, on September 24, 2006.

{¶ 10} On November 2, 2006, respondent sent Lewis a check for $30,000 accompanied by a letter stating that the BWC had not identified everyone to be repaid and suggesting that he was advancing Lewis $30,000 while respondent awaited the reimbursement.  That same day, respondent sent a letter to relator, representing that he had paid Lewis the $30,000 with the expectation of retaining the reimbursement check from the BWC when it arrived.  Respondent did not respond to relator's subsequent letter inquiring as to whether he had actually sent the BWC the money.

{¶ 11} In response to the investigation, respondent sent relator a letter on May 23, 2007, claiming entitlement to the $6,333.33 increase in attorney fees

because the contingent-fee agreement permitted him to receive 40 percent of the settlement as his fee. He also asserted that the negotiations with the BWC to settle its subrogation claim involved a separate representation subject to a separate fee of $8,176.19, but that he had subsequently agreed with Lewis to accept a fee of 40 percent of the recovery in exchange for waiving the fee for negotiating the subrogation settlement. He also placed the blame for failing to pay the BWC on his bookkeeper, who had made other mistakes and had been terminated.

{¶ 12} In a July 11, 2007 letter, respondent's counsel explained to relator that the $8,176.19 designated as "Deposition Charges" actually related to respondent's fee for settling the subrogation claim and should have been labeled "Disposition Charges" on the February 21, 2001 distribution sheet.

{¶ 13} On June 9, 2008, relator, Columbus Bar Association, charged respondent in a four-count complaint with multiple violations of the Disciplinary Rules of the Code of Professional Responsibility and with violating Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate in a disciplinary investigation). A panel appointed by the Board of Commissioners on Grievances and Discipline heard the case, made findings of misconduct, and recommended an indefinite suspension. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction.

{¶ 14} The parties have not objected to the board's report.

**Disciplinary Rule Violations**

*Count I – Improper Fee Sharing*

{¶ 15} The board found that respondent had violated DR 2-103(B) (prohibiting a lawyer from compensating another for having made a recommendation resulting in his employment) and 2-107(A)(1) (providing that lawyers who are not in the same firm must obtain client consent in order to divide legal fees) by sharing his fee with Sullivan as a reward for referring Lewis's personal-injury claim to him. We accept this finding of misconduct. We also

agree with the board's conclusion that clear and convincing evidence does not support the charges that respondent violated DR 5-101(A)(1) (prohibiting a lawyer from accepting employment if the exercise of professional judgment on behalf of the client will be or reasonably may be affected by the lawyer's interests, unless the client consents) or Gov.Bar R. V(4)(G) with regard to this conduct, and we therefore dismiss those parts of the complaint.

*Count II – Misrepresentations*

{¶ 16} The board found that respondent misrepresented to Lewis that he had incurred expenses for depositions, thereby violating DR 1-102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). We concur with this finding of misconduct.

*Count III – Failure to Honor the Fee Agreement*

{¶ 17} The board found that respondent charged attorney fees not authorized by the contingent-fee agreement when he retained 40 percent of the personal-injury settlement rather than the 33 1/3 percent provided for in the agreement, that Lewis had not agreed to pay respondent a separate fee for settling the BWC's subrogation claim, that respondent had offered contradictory explanations regarding how he had earned his fee, and that this conduct violated DR 1-102(A)(4), 1-102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law), 7-101(A)(2) (prohibiting a lawyer from intentionally failing to carry out a contract of professional employment), 9-102(B)(3) (requiring a lawyer to maintain complete records of all client property in the lawyer's possession), 9-102(B)(4) (requiring a lawyer to promptly deliver property in the lawyer's possession that the client is entitled to receive), and Gov.Bar R. V(4)(G). We concur with these findings of misconduct.

*Count IV – Retention of Client Funds*

{¶ 18} The board found that respondent had retained the $30,000 that he had withheld from Lewis ostensibly to satisfy the BWC's subrogation claim, that

he had used those funds for his own benefit, that he had failed to maintain complete records of client funds and to preserve those funds for Lewis, and that he had failed to forthrightly answer relator's direct questions during the investigation of this misconduct, thereby violating DR 1-102(A)(4), 1-102(A)(6), 7-101(A)(2), 7-101(A)(3) (prohibiting a lawyer from intentionally prejudicing or damaging his client), 7-102(A)(5) (prohibiting a lawyer from knowingly making a false statement of law or fact), 9-102(A) (requiring all funds of clients paid to a lawyer to be deposited in one or more identifiable bank accounts, in which no funds belonging to the lawyer shall be deposited), and 9-102(B)(3) and Gov.Bar R. V(4)(G). We accept these findings of misconduct.

{¶ 19} We also agree with the board's conclusion that clear and convincing evidence does not support the charges that respondent violated DR 1-102(A)(5) (prohibiting conduct prejudicial to the administration of justice) or 6-101(A)(1) (prohibiting a lawyer from representing a client without the competence and preparation reasonably required by the undertaking) with regard to this conduct, and we therefore dismiss those parts of the complaint.

**Sanction**

{¶ 20} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the duties the lawyer violated, the lawyer's mental state, and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli,* 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Because each disciplinary case is unique, we are not limited to the factors specified in the

rule but may take into account "all relevant factors" in determining what sanction to impose.  BCGD Proc.Reg. 10(B).

**{¶ 21}** Regarding mitigating factors, we accept the board's finding that respondent lacks a prior disciplinary record.  BCGD Proc.Reg. 10(B)(2)(a).  But while respondent presented evidence of his good reputation, we also agree with the board that this evidence does not show that the witnesses were fully aware of the misconduct.  Regarding aggravating factors, we accept the board's finding that respondent acted with a dishonest or selfish motive, engaged in a pattern of misconduct, committed multiple offenses, demonstrated a lack of cooperation and deception in the disciplinary process, refused to acknowledge the wrongful nature of his conduct, and harmed a vulnerable client.  BCGD Proc.Reg. 10(B)(1)(b), (c), (d), (e), (f), (g), and (h).

**{¶ 22}** The board also found that respondent failed to make complete restitution.  However, subsequent to the board issuing its report, respondent paid the balance of $17,594.20 in restitution to Lewis, which the parties represent was the full amount owed.

**{¶ 23}** The primary purpose of the disciplinary process is to protect the public from lawyers who are unworthy of the trust and confidence essential to the attorney-client relationship and to allow us to ascertain the lawyer's fitness to practice law.  *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 10.  In this case, that goal is served by an indefinite suspension.

**{¶ 24}** This sanction is consistent with our precedent.  In *Toledo Bar Assn. v. Vild,* 106 Ohio St.3d 471, 2005-Ohio-5518, 835 N.E.2d 1255, we indefinitely suspended an attorney for engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, engaging in conduct that adversely reflected on his fitness to practice law, neglecting client matters, intentionally failing to carry out a contract of employment, failing to return the client's property in the

lawyer's possession, and failing to cooperate with the disciplinary investigation. Id. at ¶ 23-24. In *Cuyahoga Cty. Bar Assn. v. Wagner*, 113 Ohio St.3d 158, 2007-Ohio-1253, 863 N.E.2d 164, ¶ 15, we imposed an indefinite suspension on an attorney who had kept unearned client funds and had failed to cooperate with the ensuing disciplinary investigation. And in *Disciplinary Counsel v. Zingarelli* (2000), 89 Ohio St.3d 210, 729 N.E.2d 1167, we indefinitely suspended an attorney for, among other things, failing to properly comply with the requirements for fee-sharing under DR 2-107(A) and for violating DR 1-102(A)(4). Id. at 218-220.

{¶ 25} Moreover, respondent has "compounded his misdeeds by refusing to acknowledge the wrongful nature of his misconduct and failing to cooperate fully and candidly in the disciplinary process." *Disciplinary Counsel v. Heiland*, 116 Ohio St.3d 521, 2008-Ohio-91, 880 N.E.2d 467, ¶ 45.

{¶ 26} Respondent has not challenged the board's findings of misconduct or the recommended sanction of indefinite suspension. Based on respondent's conduct and our precedent, he is indefinitely suspended from the practice of law in Ohio.

{¶ 27} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

McNamara Law Office and Dennis W. McNamara; Vorys, Sater, Seymour & Pease, L.L.P., and James E. Phillips; and Bruce A. Campbell, Bar Counsel, and A. Alysha Clous, Assistant Bar Counsel, for relator.

Kettlewell & Donchatz, L.L.C., and Charles J. Kettlewell, for respondent.

_____