DISCIPLINARY COUNSEL *v.* HOPPEL.

**[Cite as *Disciplinary Counsel v. Hoppel,* 129 Ohio St.3d 53, 2011-Ohio-2672.]**

*Attorneys at law — Misconduct — Multiple disciplinary violations — Two-year suspension, partially stayed.*

(No. 2010-1805 — Submitted February 2, 2011 — Decided June 8, 2011.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 09-068.

_____

**Per Curiam**.

**{¶ 1}** Respondent, Richard Vincent Hoppel of East Liverpool, Ohio, Attorney Registration No. 0063000, was admitted to the practice of law in Ohio in 1994.

**{¶ 2}** In August 2009, relator, Disciplinary Counsel, filed a complaint charging respondent with more than 80 violations of the Rules of Professional Conduct after he accepted attorney fees to represent multiple clients in bankruptcy proceedings and then failed to perform the work. At the hearing, the relator dismissed two of the alleged violations. Based upon findings that respondent committed all of the remaining charged violations and that his cocaine addiction contributed to his misconduct, the panel and board recommend that we indefinitely suspend respondent from the practice of law in Ohio.

**{¶ 3}** Respondent has accepted the board's findings of fact and misconduct, but objects to the recommended sanction. We granted him leave to supplement the record with mitigating evidence demonstrating that since the board issued its report, he has made restitution to each of the clients identified in relator's complaint.

**{¶ 4}** In light of respondent's successful completion of inpatient treatment for his addiction, his more than two years of sustained sobriety, and his payment of restitution to each of the clients harmed by his misconduct, we reject the board's recommended sanction and impose a two-year suspension, with 18 months stayed on conditions.

## Misconduct

**{¶ 5}** A panel of the Board of Commissioners on Grievances and Discipline accepted the parties' agreed stipulations of fact, as well as respondent's stipulation to 30 of the alleged violations of the Rules of Professional Conduct. It also received 52 stipulated exhibits, including a transcript of respondent's deposition testimony. At the hearing, the panel heard respondent's testimony and received 17 additional exhibits submitted by respondent. This evidence demonstrates that respondent accepted retainers and deposits for court costs totaling over $14,000 for 14 separate client matters and converted them to his own use to buy cocaine. He repeatedly failed to perform work on behalf of his clients and failed to appear at court hearings. Respondent was found in contempt of court, and the judge suspended his fine and court costs conditioned on his good behavior. When he missed two additional hearings, the judge sentenced him to two consecutive 60-day jail terms. Respondent served 13 days of that sentence before it was suspended on the condition that he immediately report for inpatient drug rehabilitation.

**{¶ 6}** Respondent also failed to respond to his client's attempts to contact him, failed to keep clients reasonably informed about the status of their matters, and failed to reasonably consult with one client about the means necessary to achieve her objectives. He collected excessive and unreasonable fees, as demonstrated by his collection and retention of attorney fees and corresponding failure to perform the clients' work. He engaged in dishonesty, deceit, and misrepresentation, seeking leave of court to pay filing fees in installments when

2

he had already collected the full filing fee from his clients. And having spent his client's funds on drugs, he falsely advised them that he needed more time to prepare their bankruptcy petitions for filing.

**{¶ 7}** Based upon these facts, the panel found that respondent had committed each of the charged violations. Thus, the panel found that respondent had committed three violations of Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 14 violations of Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), one violation of Prof.Cond.R. 1.4(a)(1) (requiring a lawyer to inform the client of any decision or circumstance with respect to which the client's informed consent is required), one violation of Prof.Cond.R. 1.4(a)(2) (requiring a lawyer to reasonably consult with the client about the means by which the client's objectives are to be accomplished), ten violations of Prof.Cond.R. 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 13 violations of Prof.Cond.R. 1.5 (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee), three violations of Prof.Cond.R. 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), 14 violations of Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), six violations of Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and 15 violations of Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

**{¶ 8}** The board adopted these findings of fact and misconduct, and so do we.

## Sanction

**{¶ 9}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the

sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 10}** As mitigating factors, the parties stipulated and the board found that respondent had no prior disciplinary record, had made full and free disclosure to the board, and had displayed a cooperative attitude toward these disciplinary proceedings. See BCGD Proc.Reg. 10(B)(2)(a) and (d). The board also found that respondent's cocaine addiction qualified as a mitigating factor pursuant to BCGD Proc.Reg. 10(B)(2)(g). In doing so, the board relied upon the testimony of Paul A. Caimi, a regional director of the Ohio Lawyers Assistance Program ("OLAP"). He testified that at the time of the hearing, respondent, a crack-cocaine addict, was in remission and had been sober since October 23, 2008, as verified through random drug and alcohol testing. Respondent has successfully completed an inpatient treatment program at the Keating Center, as well as outpatient, aftercare, and family-services programs. He has also complied with his OLAP contract, which was to expire on May 11, 2011.[1]

**{¶ 11}** Caimi testified that in his professional opinion, respondent's addiction to cocaine contributed to his misconduct, all of which occurred while he was using cocaine. He stated that respondent's prognosis is good and that he

---

1. On May 16, 2011, respondent moved this court to supplement the record with evidence that he has extended his contract with OLAP until May 11, 2013. Relator moved to strike that motion on May 19, 2011. Because S.Ct.Prac.R. 9.9 prohibits a party from filing additional briefs or other materials relating to the merits of the case after it has been orally argued unless ordered by the court, with the exception of a citation to relevant authority issued after oral argument, we grant relator's motion to strike respondent's motion to supplement the record.

could competently practice law as long as he continues to follow his recovery program.

{¶ 12} The parties did not stipulate to any aggravating factors, but the board found that respondent had acted with a dishonest or selfish motive, had engaged in a pattern of misconduct involving multiple offenses, had caused harm to vulnerable victims, and had failed to make restitution. See BCGD Proc.Reg. 10(B)(1)(b), (c), (d), and (i).

{¶ 13} The board observed that the cases relator cited in support of its recommended sanction of an indefinite suspension are distinguishable from this case because some of them involved the aggravating factor of failure to cooperate in the disciplinary investigation and none of them involved the mitigating factor of drug dependency. *Columbus Bar Assn. v. Chasser*, 124 Ohio St.3d 578, 2010-Ohio-956, 925 N.E.2d 595, ¶ 21; *Cleveland Metro. Bar Assn. v. Gottehrer*, 124 Ohio St.3d 519, 2010-Ohio-929, 924 N.E.2d 825, ¶ 15; *Cincinnati Bar Assn. v. Deaton*, 102 Ohio St.3d 19, 2004-Ohio-1587, 806 N.E.2d 503, ¶ 31; and *Columbus Bar Assn. v. Kiesling*, 125 Ohio St.3d 36, 2010-Ohio-1555, 925 N.E.2d 970, ¶ 45. Nonetheless, the panel and board recommend that we indefinitely suspend respondent from the practice of law in Ohio. The board also recommends that we order respondent to pay restitution to the clients harmed by his conduct.

{¶ 14} Respondent objects to the board's recommended sanction, arguing that the panel and board did not have information regarding his payment of restitution to all of the clients named in relator's complaint and failed to consider certain evidence of his good character. Based upon these additional mitigating factors and the sanctions imposed by this court in seven cases cited by respondent, he argues that a two-year suspension with 18 months stayed on conditions is the appropriate sanction for his misconduct.

**{¶ 15}** At the time of the panel hearing, respondent had not made restitution to the clients harmed by his misconduct and did not have the financial means to do so. On January 19, 2011, however, we granted respondent's motion to supplement the record with evidence that he had made full restitution to each of the clients identified in relator's complaint. Respondent personally delivered checks and letters of apology to 11 of those clients. The three remaining clients received their checks and respondent's apology by mail.

**{¶ 16}** Although respondent submitted five letters attesting to his good character apart from the events at issue here, his treatment for drug addiction, and his continued sobriety, the panel and board reports do not specify whether they were afforded any mitigating effect. Because this court is the final arbiter of the facts and conclusions of law in disciplinary proceedings, see, e.g. *Ohio State Bar Assn. v. Reid* (1999), 85 Ohio St.3d 327, 708 N.E.2d 193, at paragraph one of the syllabus, respondent has not suffered any prejudice as a result of this alleged oversight.

**{¶ 17}** Respondent has submitted letters from two judges, an attorney who considered respondent to have been a mentor, an attorney who served as respondent's cosponsor during his rehabilitation and recovery, and a licensed independent chemical-dependency counselor. The two judges wrote that they have known respondent throughout his legal career and have observed his competent, ethical, and professional practice of law, his decline into substance abuse, and his subsequent rehabilitation. Having observed the best and worst of respondent's professional career, these judges support respondent's efforts to return to the practice of law and state that they would welcome him in their courtrooms. And the attorney who considered respondent to have been his mentor has known him to be "approachable, courteous, and respectful to his colleagues and clients." He expressed his view that the actions giving rise to this disciplinary action were "totally out of character" for respondent and expressed

his belief that "[s]omething was affecting his good judgment and personality." These letters, although limited in number, offer credible evidence of respondent's good character when he is not using cocaine.

{¶ 18} The remaining letters state that respondent has completed a term of inpatient treatment for his drug addiction, that he has made progress, and that he has made a commitment to his sobriety. And although they may have been considered as evidence that respondent has completed a course of drug rehabilitation, they nonetheless offer some limited evidence of his character and commitment to staying sober.

{¶ 19} Although we have accepted evidence that respondent has made restitution to those clients harmed by his drug addiction and attribute some mitigating value to his character evidence, we reject the parties' stipulation, respondent's testimony, and the board's finding that respondent has no prior disciplinary record. This court's publicly available online attorney directory shows that this court briefly suspended respondent's license to practice law on December 3, 2007, for failing to comply with attorney-registration rules. See *In re Attorney Registration Suspension of Hoppel*, 116 Ohio St.3d 1420, 2007-Ohio-6463, 877 N.E.2d 305; *In re Reinstatement of Hoppel*, 116 Ohio St.3d 1498, 2008-Ohio-290, 880 N.E.2d 97. Though this registration suspension occurred during the height of respondent's drug addiction, it is, nonetheless, an aggravating factor pursuant to BCGD Proc.Reg. 10(B)(1)(a). See, e.g., *Columbus Bar Assn. v. Larkin*, 128 Ohio St.3d 368, 2011-Ohio-762, 944 N.E.2d 669, ¶ 9; *Disciplinary Counsel v. Mitchell*, 124 Ohio St.3d 266, 2010-Ohio-135, 921 N.E.2d 634, ¶ 8; and *Akron Bar Assn. v. Paulson*, 112 Ohio St.3d 334, 2006-Ohio-6678, 859 N.E.2d 932, ¶ 12 (all recognizing attorney-registration violations as prior disciplinary offenses pursuant to BCGD Proc.Reg. 10(B)(1)(a)).

{¶ 20} We have acknowledged that the presumptive sanction for the misappropriation of client funds is disbarment. *Lorain Cty. Bar Assn. v.*

*Fernandez*, 99 Ohio St.3d 426, 2003-Ohio-4078, 793 N.E.2d 434, ¶ 9. A presumption in favor of permanent disbarment, however, may be rebutted. See, e.g., *Cincinnati Bar Assn. v. Kellogg*, 126 Ohio St.3d 360, 2010-Ohio-3285, 933 N.E.2d 1085, ¶ 18, quoting *Disciplinary Counsel v. Smith*, 101 Ohio St.3d 27, 2003-Ohio-6623, 800 N.E.2d 1129, ¶ 9 (" 'Absent any mitigating factors, disbarment is the appropriate sanction for an attorney's misappropriation of client funds' "); *Disciplinary Counsel v. Hunter*, 106 Ohio St.3d 418, 2005-Ohio-5411, 835 N.E.2d 707, ¶ 42 (Moyer, C.J., dissenting) ("by definition, a presumptive sanction of disbarment does not preclude the application of mitigation. That is, the presumption in favor of disbarment in the case of theft from clients is a rebuttable one").

{¶ 21} The primary purpose of the disciplinary sanctions is not to punish the offender but to protect the public from lawyers who are unworthy of the trust and confidence essential to the attorney-client relationship. *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368. "Thus, even in cases of egregious misconduct and illegal drug use, we have decided against permanent disbarment based on the lawyer's probable recovery from the drug addiction that caused the ethical breaches." *Cincinnati Bar Assn. v. Lawson*, 119 Ohio St.3d 58, 2008-Ohio-3340, 891 N.E.2d 749, ¶ 73, citing *Disciplinary Counsel v. Garrity*, 98 Ohio St.3d 317, 2003-Ohio-740, 784 N.E.2d 691, ¶ 12 (lawyer and former pharmacist convicted of stealing prescription drugs suspended indefinitely after showing renewed dedication to his treatment for his addiction). When an attorney's misconduct is motivated by an addiction to drugs or alcohol, and we believe that the attorney is committed to recovery and no longer poses a threat to the public or the judicial system, we tailor the sanction to assist and monitor the attorney's recovery. *Disciplinary Counsel v. Connor*, 105 Ohio St.3d 100, 2004-Ohio-6902, 822 N.E.2d 1235, ¶ 19.

**{¶ 22}** In this case, the evidence demonstrates that respondent was a conscientious, capable, and professional attorney until his judgment was clouded by his drug addiction. He has successfully completed a 90-day inpatient treatment program for his drug addiction, has complied with all of the terms of his OLAP contract, including his regular attendance at Alcoholics Anonymous meetings and compliance with random drug and alcohol screenings, and has expressed his willingness to extend his OLAP contract for the rest of his professional career if necessary. At the time of the panel hearing in May 2010, he had been sober for a year and a half. And since the board issued its opinion, he has made restitution to each of the clients identified in relator's complaint, delivering their refunds and a sincere letter of apology to many of them in person.

**{¶ 23}** Of the cases cited by respondent in his objections, we find *Disciplinary Counsel v. Greco*, 107 Ohio St.3d 155, 2005-Ohio-6045, 837 N.E.2d 369, to be most instructive. Greco had accepted retainers from numerous clients, neglected their cases, and lied to his clients to conceal his neglect and was slow to comply with their requests for refunds of their retainers and unearned fees. Id. at ¶ 56. Like the respondent in this case, Greco's misconduct emanated from a diagnosed chemical dependency, for which Greco had successfully completed several treatment programs. Id. at ¶ 46-52. Greco was extremely cooperative and forthcoming throughout the disciplinary process and expressed sincere remorse for his conduct, id. at ¶ 52, but he had not made full restitution to his affected clients, id. at ¶ 56. Based upon these facts, we concluded that an actual suspension was necessary to protect the public. Therefore, we suspended Greco from the practice of law for two years, with 18 months stayed on the conditions that he comply with his OLAP contract and serve monitored probation in accordance with Gov.Bar R. V(9) during the stayed portion of the suspension. Id. at ¶ 57.

**{¶ 24}** We also imposed two-year suspensions with 18 months conditionally stayed based upon comparable misconduct emanating from substance abuse in *Toledo Bar Assn. v. Shousher*, 112 Ohio St.3d 533, 2007-Ohio-611, 861 N.E.2d 536; and *Cincinnati Bar Assn. v. Washington*, 109 Ohio St.3d 308, 2006-Ohio-2423, 847 N.E.2d 435.

**{¶ 25}** Based upon the foregoing, we sustain respondent's objection to the board's report and agree that a two-year suspension, with 18 months stayed on conditions, is the appropriate sanction for respondent's misconduct.

**{¶ 26}** Accordingly, Richard Vincent Hoppel is hereby suspended from the practice of law in Ohio for two years. The final 18 months of that suspension, however, shall be stayed on the conditions that he extend his OLAP contract for two years from the date of this opinion, maintain full compliance with that contract, and commit no further misconduct. If he fails to comply with these conditions, the stay will be lifted, and he will serve the full two-year suspension. Costs are taxed to respondent.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Heather L. Hissom, Assistant Disciplinary Counsel, for relator.

DePietro Law Office, L.L.C., and Harry J. DePietro, for respondent.

_____