[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. Lemieux,* Slip Opinion No. 2014-Ohio-2127.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-2127

CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* LEMIEUX.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. Lemieux,* Slip Opinion No. 2014-Ohio-2127.]**

*Attorney misconduct, including failing to act with reasonable diligence in representing clients, failing to keep clients informed, engaging in conduct prejudicial to the administration of justice, and failing to respond to a disciplinary authority during an investigation—Indefinite suspension.*

(No. 2013-1246—Submitted October 9, 2013—Decided May 27, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 11-095.

_____

**Per Curiam**.

{¶ 1} Respondent, John Louis Lemieux of Gates Mills, Ohio, Attorney Registration No. 0073494, was admitted to the practice of law in Ohio in 2001. In October 2011, a probable-cause panel of the Board of Commissioners on

Grievances and Discipline certified a four-count complaint[1] filed by relator, Cleveland Metropolitan Bar Association, against Lemieux. The complaint alleged that while abusing drugs and alcohol, Lemieux accepted payment from four clients and then failed to perform their legal work, failed to reasonably communicate with them, and failed to cooperate in the resulting disciplinary investigations.

{¶ 2} In December 2011, we granted relator's motion for an interim remedial suspension, finding that Lemieux had engaged in conduct that violates the Ohio Rules of Professional Conduct and posed a substantial threat of serious harm to the public. 130 Ohio St.3d 1501, 2011-Ohio-6674, 958 N.E.2d 962.

{¶ 3} Relator amended its complaint in June 2012, adding two counts: one alleging that Lemieux had engaged in misconduct with respect to an additional client and a second alleging that he had failed to deposit unearned payments from clients into a client trust account.

{¶ 4} The parties submitted numerous exhibits and stipulated to many facts, and Lemieux admitted some of the alleged rule violations with respect to Counts One through Four and Count Six of the amended complaint. At the January 2013 hearing, the panel heard testimony from Lemieux, three of the grievants, and two physicians trained in addiction medicine, one of whom is Lemieux's treating physician.

{¶ 5} The panel made findings of fact and determined that Lemieux committed the conduct charged in Counts One through Four and Count Six but unanimously voted to dismiss Count Five based on the insufficiency of the

---

[1] The original complaint actually listed five counts, but the fifth count alleged the aggravating factors. When the complaint was later amended to add two counts, those counts were numbered Counts Five and Six, and the aggravating factors were moved to Count Seven.

evidence.[2]  After considering the applicable aggravating and mitigating factors and the sanctions we have imposed for comparable misconduct, the panel recommended that we impose an indefinite suspension with conditions for reinstatement, which it asserts will adequately protect the public from future misconduct without eroding Lemieux's commitment to recovery.  The board adopted the panel's findings of fact and misconduct and its recommended sanction.  Neither party filed objections to the board's report.

{¶ 6} We adopt the board's findings of fact and misconduct and indefinitely suspend Lemieux from the practice of law in Ohio.

**Misconduct**

{¶ 7} Lemieux abused drugs and alcohol for years, and he first entered into a contract with the Ohio Lawyers Assistance Program ("OLAP") in late 2001 or early 2002, though he rarely complied with it.  He entered into a detoxification program in 2009 and signed a new three-year chemical-dependency contract with OLAP in June 2009.

{¶ 8} In the spring of 2010, near the time that the misconduct at issue in this case began, he entered another detoxification program.  And in the summer of that year, he entered a 30-day inpatient-treatment program and signed another three-year OLAP contract.  He entered another inpatient rehabilitation program in January 2011.

---

[2] In its report, the panel stated its intention to dismiss the alleged violation in Count Five of relator's complaint.  Gov.Bar R. V(6)(G), which permits a unanimous panel of the board to order the dismissal of a count without referring it to the board or this court for review, requires the panel to provide notice to counsel of record and other interested parties.  The record in this case does not establish that the panel complied with the notice requirements of that rule.  Instead, the panel certified its findings of fact and recommendations to the board in accordance with Gov.Bar R. V(6)(H) and (I).  Because the board did not order dismissal and provide the notices required by Gov.Bar R. V(6)(G), we treat the purported dismissal as a recommendation that Count Five be dismissed.  *See, e.g.*, *In re Complaint Against Harper*, 77 Ohio St.3d 211, 216, 673 N.E.2d 1253 (1996); *Disciplinary Counsel v. Doellman*, 127 Ohio St.3d 411, 2010-Ohio-5990, 940 N.E.2d 928, ¶ 31-33.  We accept the panel's recommendation and dismiss Count Five.

**{¶ 9}** The Cuyahoga County Probate Court declared Lemieux legally incompetent and appointed a legal guardian to handle his affairs in February 2011. The court terminated the guardianship in April 2011, following his release from inpatient treatment. Despite his extensive treatment, Lemieux has suffered multiple relapses, including an overdose in May 2011 and a failed drug screen in October 2011.

Count One—The Hubbard Matter

**{¶ 10}** Michael Hubbard was arrested on September 7, 2010, and charged with a felony. After obtaining docket information from the Cuyahoga County Clerk of Courts, Lemieux sent Hubbard a solicitation letter in which he referred to his solo practice as a firm with multiple skilled and experienced attorneys.

**{¶ 11}** Hubbard's mother retained Lemieux on September 14, 2010, and paid $1,000 of his quoted fee of $2,500. She paid the remaining $1,500 approximately six weeks later. Hubbard remained incarcerated throughout the representation.

**{¶ 12}** Lemieux appeared at Hubbard's arraignment and several pretrial hearings, but requested a continuance at each pretrial to conduct further discovery. He missed the final pretrial, scheduled for November 4, 2010, but the court granted Hubbard's request to reschedule it for the following day. Lemieux attended the rescheduled pretrial, but obtained a continuance so that Hubbard could undergo a competency evaluation.

**{¶ 13}** Hubbard's mother testified that during one of her meetings with Lemieux at his office, he had spoken with slurred speech and walked off balance and she had advised him to go home. She also testified that he had not returned her phone calls on several occasions. The court permitted Lemieux to withdraw from Hubbard's case on December 7, 2010, and appointed another attorney to complete the representation.

{¶ 14} Lemieux stipulated that Hubbard had requested a refund of her $2,500 payment and that he had not refunded any portion of her fees. He admits that the fees should be returned. He also stipulates that he failed to respond to a certified letter from relator inquiring about Hubbard's grievance.

{¶ 15} The board found that this conduct violated Prof.Cond.R. 1.2(a) (requiring a lawyer to abide by a client's decisions concerning the objectives of representation and to consult with the client as to the means by which they are to be pursued), 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(2) (requiring a lawyer to reasonably consult with his client about the means by which the client's objectives are to be accomplished), 1.4(a)(3) (requiring a lawyer to keep his client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from his client), 1.4(b) (requiring a lawyer to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation), 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee), 7.1 (prohibiting a lawyer from making or using false, misleading, or nonverifiable communication about the lawyer or the lawyer's services), 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation), 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law) and Gov.Bar R. V(4)(G) (prohibiting a lawyer from neglecting or refusing to assist in a disciplinary investigation). We adopt these findings of fact and misconduct.

Count Two—The Heise and Giguere Matters

{¶ 16} Sashewa Giguere was arrested in March 2010 in connection with the alleged abuse of one of her children by someone Giguere knew. She received

a direct-mail advertisement from Lemieux that was identical to the advertisement discussed in Count One. In late March, Giguere's mother, Jennifer Heise, retained Lemieux to represent Giguere in her criminal case and to represent her (Heise) in her effort to obtain custody of Giguere's four children. Lemieux quoted Heise a fee of $3,000, which Heise assumed meant $1,500 for each matter. She paid him a total of $2,760.

{¶ 17} Lemieux appeared at two pretrial hearings on behalf of Giguere and requested a continuance each time. He failed to appear at a May 2010 pretrial hearing and did not give Giguere a reason for his absence. Giguere eventually entered into a plea agreement, and Lemieux said that he would file a motion for early release on her behalf, but never did so. Consequently, Giguere filed the motion pro se, but the court denied it.

{¶ 18} Although Lemieux said that he would initiate Heise's custody matter, he stopped returning her phone calls and failed to file the necessary paperwork. Heise commenced the action pro se, but it was dismissed by the court. While she currently has custody of three of her grandchildren, the fourth child is in the child's father's custody.

{¶ 19} Lemieux failed to respond to relator's first letter of inquiry regarding Heise's grievance, and he sent a handwritten response to the second letter, denying any misconduct.

{¶ 20} The board found that Lemieux's conduct in the Giguere and Heise matters violated Prof.Cond.R. 1.3, 1.4(a)(2), 1.4(a)(4), 1.5(a), 7.1, 8.1(b), 8.4(d), and 8.4(h) and Gov.Bar R. V(4)(G). We adopt these findings of fact and misconduct.

Count Three—The Pritchett Matter

{¶ 21} Arnell Pritchett was arrested in August 2010. His fiancée, Shasta Philpott, received a solicitation letter from Lemieux and asked him to represent Pritchett. She informed him that she was not employed and would need to get the

6

money for his retainer. She made five payments over the next five weeks, totaling $1,350. To collect the payments, Lemieux either met Philpott at her car or had her meet his friend Ken Watson at WalMart.

{¶ 22} Lemieux obtained at least six continuances of pretrials during his brief representation of Pritchett, without offering any explanation to his client, who was jailed throughout the representation. Philpott testified that she had called Lemieux periodically to let him know that she had money for him but had not discussed the case with him during these calls. And the one time that she called Lemieux (with Pritchett also on the line, from jail) to get an update on the case and find out why he had not visited Pritchett in jail, Lemieux flew into a rage, and it became clear to her that he just wanted her money.

{¶ 23} Sensing that something was not right, Philpott made an unannounced visit to Lemieux's office, where she met attorney Val Schurowliew, who shared office space with Lemieux. He indicated to her that Lemieux was using drugs and that she would not get her money back. Although Lemieux did not respond to relator's first letter of inquiry, he did submit a written response to the second inquiry. He stipulates that he did not complete Pritchett's representation and that Philpott is entitled to a full refund of her fee.

{¶ 24} The board found that Lemieux's conduct in the Pritchett matter violated Prof.Cond.R. 1.3, 1.4(a)(4), 1.5(a), 8.1(b), 8.4(d), and 8.4(h) and Gov.Bar R. V(4)(G). We adopt these findings of fact and misconduct.

Count Four—The Orr Matter

{¶ 25} Maxie Orr was arrested in August 2010. On October 6, 2010, Orr's mother, Lachelle Pearl, paid Lemieux $1,000 to handle his case. Pearl reported that Lemieux was jittery during the initial consultation, and Lemieux has stipulated that he was abusing drugs and alcohol throughout the time he represented Orr. On October 17, 2010, he telephoned Pearl to discuss the case and used profanities. The next day, he called again, requesting more money and

telling Pearl, with slurred speech, that he was "working his ass off." Pearl asked Lemieux for an itemization of the work he had performed on the case, and he told her that he would provide the list to get her "out of [his] hair." When Pearl asked him why he was speaking to her in that manner, he responded, "Yeah, yeah," and hung up the telephone. When she went to his office on October 19, 2010, Schurowliew, the other attorney who rented space in the same office, informed her that Lemieux had a drug and alcohol problem. Pearl also discovered that Lemieux had never entered an appearance in Orr's case.

**{¶ 26}** The parties stipulated that after relator sent its first letter of inquiry regarding Pearl's grievance, Lemieux called and requested an extension of time to respond, purportedly to collect electronic records to show that he had spent many hours on the computer working on the case. After the extended deadline passed without a response from Lemieux, relator sent a second letter of inquiry, to which Lemieux submitted a handwritten note denying any misconduct. Lemieux stipulates that Pearl is entitled to a full refund of her $1,000 payment.

**{¶ 27}** The board found that Lemieux's misconduct in this matter violated Prof.Cond.R. 1.3, 1.5(a), 8.1(b), 8.4(d), and 8.4(h) and Gov.Bar R. V(4)(G). We adopt these findings of fact and misconduct.

Count Six—Trust Account Violations

**{¶ 28}** Lemieux stipulated that he did not maintain a client trust account and therefore the money he received from his clients was not deposited in such an account to be held until he had earned it. Thus, the board found, and we agree, that he violated Prof.Cond.R. 1.15(c) (requiring a lawyer to deposit legal fees and expenses paid in advance into a client trust account and to withdraw them only as fees are earned or expenses incurred).

**Sanction**

**{¶ 29}** In determining the appropriate sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated

and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. We also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 30} Here, the board found that five of the nine aggravating factors enumerated in BCGD Proc.Reg. 10(B)(1) are present: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, the vulnerability of and resulting harm to the victims of the misconduct, and the failure to make restitution. *See* BCGD Proc.Reg. 10(B)(1)(b), (c), (d), (h), and (i).

{¶ 31} In mitigation, the board found that Lemieux did not have a prior disciplinary record. *See* BCGD Proc.Reg. 10(B)(2)(a). The board thoroughly reviewed Lemieux's lengthy history of drug and alcohol abuse and his treatment, which dates back to late 2001, but it did not find that that his chemical dependency qualified as a mitigating factor pursuant to BCGD Proc.Reg. 10(B)(2)(g).

{¶ 32} BCGD Proc.Reg. 10(B)(2)(g) provides that chemical dependency or mental disability may be considered in favor of recommending a less severe sanction when all of the following are present: (i) a diagnosis of a chemical dependency or mental disability by a qualified health-care professional or alcohol- or substance-abuse counselor, (ii) a determination that the chemical dependency or mental disability contributed to cause the misconduct, (iii) in the event of chemical dependency, a certification of successful completion of an approved treatment program or in the event of mental disability, a sustained period of successful treatment, and (iv) a prognosis from a qualified health-care professional or alcohol- or substance-abuse counselor that the attorney will be able to return to the competent, ethical, and professional practice of law under specified conditions.

{¶ 33} Lemieux has been diagnosed with a chemical dependency, primarily on opiates. The nature of his misconduct and the fact that it occurred during a period in which he was using drugs, entering into brief remissions, and then relapsing sufficiently demonstrate that his chemical dependency contributed to his misconduct. Thus, Lemieux has satisfied the first two criteria of BCGD Proc.Reg. 10(B)(2)(g).

{¶ 34} While there is ample evidence that Lemieux *participated* in multiple drug-treatment programs, the only evidence that he successfully completed those programs was his own testimony. *See* BCGD Proc.Reg. 10(B)(2)(g)(iii). However, Lemieux presented evidence that he had passed monthly drug tests for approximately 15 months and had been participating in treatment, including the use of Suboxone, a prescribed opiate-agonist treatment, under the supervision of Dr. Richard DeFranco, since April 2009. He also presented evidence that he had been attending 12-step meetings in compliance with his OLAP contract since February 2012.

{¶ 35} The most recent report from OLAP in the record is an October 11, 2012 letter from Paul Caimi, the associate director of OLAP, which states that Lemieux had been sober for over ten months, had regularly tested negative for illicit drug use, had been regularly attending 12-step meetings as required by his June 2010 OLAP contract, and had satisfactorily remained in contact with Caimi since approximately March 1, 2012.

{¶ 36} Neither Dr. DeFranco nor relator's expert, Dr. Ted Parran, an internal-medicine physician with a subspecialty certification in addiction medicine, expressly stated that Lemieux would be able to return to the competent, ethical, and professional practice of law under specified conditions, as required by BCGD Proc.Reg. 10(B)(2)(g)(iv). While Dr. DeFranco believed that each successive attempt at sobriety increased the odds that Lemieux would stay sober, Dr. Parran testified that Lemieux's multiple relapses while subject to an OLAP

monitoring agreement were a "very poor prognostic sign in terms of long-term sobriety." But even he agreed that Lemieux's remaining sober for more than a year leading up to the hearing is a promising sign for his future.

{¶ 37} To be sure that Lemieux is not using drugs, Dr. Parran recommended that the frequency of his random drug screens be increased from approximately once per month to at least weekly, mainly because his drugs of choice cannot be detected if they are used more than 36 hours before testing. Due to Lemieux's history of relapse, Dr. Parran would require 18 to 24 months of "verified ironclad documentation of sobriety" with "verified ironclad documentation of full adherence with a treatment plan" before even considering whether Lemieux could return to work. He would also require Lemieux to obtain an opinion regarding his fitness to practice law from an addiction specialist other than his treating physician and would require a mental-health evaluation if the addiction specialist felt it was a good idea.

{¶ 38} In a July 2012 letter to Caimi regarding Dr. Parran's written evaluation, Dr. DeFranco stated that Lemieux should continue to attend four or more 12-step meetings per week. He indicated that his relapse-prevention plan should include weekly therapy with a licensed addiction counselor and aftercare for one to two years. DeFranco recommended that Lemieux be closely monitored with random urine testing for five years—four times per month for one to two years, and then two times per month. He also agreed that a mental-health evaluation would be beneficial.

{¶ 39} Although Lemieux has not satisfied all of the requirements for his chemical dependency to be considered as a mitigating factor, we nonetheless find that his diagnosed condition, his sustained period of compliance with his OLAP contract, and his ongoing treatment should be accorded some mitigating effect. *See, e.g., Disciplinary Counsel v. Anthony*, 138 Ohio St.3d 129, 2013-Ohio-5502, 4 N.E.3d 1006, ¶ 13 (according some mitigating effect to the respondent's

diagnosed pathological gambling disorder, his entering into an OLAP contract, his commencement of treatment with a clinical psychologist, and his involvement in Gamblers Anonymous, even though he was not able to satisfy all of the requirements of BCGD Proc.Reg. 10(B)(2)(g)).

{¶ 40} In its posthearing brief, relator argued that because Lemieux's misconduct includes neglecting client matters, taking retainers and failing to carry out contracts of employment, failing to return unearned fees, and failing to cooperate in the ensuing disciplinary investigations, he should be disbarred. Alternatively, relator argued that he should be indefinitely suspended with his reinstatement subject to stringent conditions. And given Lemieux's propensity to relapse, relator urged that he receive no credit for his interim remedial suspension.

{¶ 41} The panel and board concluded that an indefinite suspension with stringent conditions for reinstatement and a three-year period of probation following reinstatement will adequately protect the public from future misconduct without eroding Lemieux's current commitment to recovery.

{¶ 42} Lemieux engaged in multiple acts of misconduct by accepting legal fees from clients and failing to perform the work, failing to reasonably communicate with his clients during their representation, failing to maintain a client trust account, and issuing solicitation letters that were misleading because they gave the impression that he worked for a firm with multiple lawyers, when in fact he was a solo practitioner.

{¶ 43} Neglect of legal matters and failure to cooperate in the ensuing disciplinary investigation generally warrant an indefinite suspension from the practice of law in Ohio. *See, e.g.*, *Disciplinary Counsel v. Hoff*, 124 Ohio St.3d 269, 2010-Ohio-136, 921 N.E.2d 636, ¶ 10, citing, *Disciplinary Counsel v. Mathewson*, 113 Ohio St.3d 365, 2007-Ohio-2076, 865 N.E.2d 891, ¶ 19. And accepting retainers from clients but failing to carry out the employment is tantamount to theft of the fee from the client—an offense for which we have

stated the presumptive sanction is permanent disbarment. *Cincinnati Bar Assn. v. Weaver*, 102 Ohio St.3d 264, 2004-Ohio-2683, 809 N.E.2d 1113, ¶ 16. But we often temper that sanction in the presence of significant mitigating evidence. *See, e.g., Dayton Bar Assn. v. Fox*, 108 Ohio St.3d 444, 2006-Ohio-1328, 844 N.E.2d 346; *Disciplinary Counsel v. Tyack*, 107 Ohio St.3d 35, 2005-Ohio-5833, 836 N.E.2d 568. As *Cincinnati Bar Assn. v. Lawson*, 119 Ohio St.3d 58, 2008-Ohio-3340, 891 N.E.2d 749, and *Disciplinary Counsel v. Hoppel*, 129 Ohio St.3d 53, 2011-Ohio-2672, 950 N.E.2d 171, demonstrate, this is particularly true in cases involving chemical dependency.

{¶ 44} Acknowledging that the primary purpose of disciplinary sanctions is to protect the public, we have stated:

> Thus, even in cases of egregious misconduct and illegal drug use, we have decided against permanent disbarment based on the lawyer's probable recovery from the drug addiction that caused the ethical breaches. See, e.g., *Disciplinary Counsel v. Garrity*, 98 Ohio St.3d 317, 2003-Ohio-740, 784 N.E.2d 691, ¶ 12 (lawyer and former pharmacist convicted of stealing prescription drugs suspended indefinitely after showing renewed dedication to his treatment for his addiction). We tailor the sanction, when appropriate, to assist in and monitor the attorney's recovery. *Cincinnati Bar Assn. v. Washington*, 109 Ohio St.3d 308, 2006-Ohio-2423, 847 N.E.2d 435, ¶ 9.

*Lawson* at ¶ 73.

{¶ 45} In *Lawson*, we indefinitely suspended an attorney who was addicted to prescription pain medications and who admitted to practicing law for seven years while under the influence of drugs. We found that he had acted

13

dishonestly and selfishly by spending fees paid by clients before earning them and neglecting their cases while illicitly obtaining prescriptions for painkilling medication from his doctor; failing to provide competent representation to his clients by missing filing deadlines, including statute-of-limitations deadlines; failing to reasonably communicate with his clients; authorizing his employees to misuse his client trust account; misappropriating his clients' settlement proceeds; and lying during the disciplinary investigation. *Id.* at ¶ 19, 21, 24, 28, 30, 34, 37, 44, 49, 58, 60. His misconduct spanned a number of years, jeopardized numerous clients' interests, and cost his clients more than $40,000. *Id.* at ¶ 66.

{¶ 46} Lawson's conduct was far more egregious than Lemieux's in the length of time during which it occurred, the number of clients harmed by his conduct, and the extent of the harm they suffered. But evidence of Lawson's good character and reputation, his remorse, and his efforts to recover from his chemical dependency persuaded us to impose an indefinite suspension—leaving open the possibility that he could practice law again if he regained both his sobriety and his ethical bearings. *Id.* at ¶ 74.

{¶ 47} In *Hoppel*, 129 Ohio St.3d 53, 2011-Ohio-2672, 950 N.E.2d 171, at ¶ 13-14, 26, we sustained the respondent's objection to the recommended sanction of an indefinite suspension and imposed a two-year suspension with 18 months stayed on conditions for conduct that is more comparable to that of Lemieux.

{¶ 48} Hoppel, who was addicted to crack cocaine, had neglected 14 separate client matters, failed to keep clients reasonably informed about the status of their matters, and failed to reasonably consult with one client about the means necessary to achieve her objectives. *Id*. at ¶ 5-6, 10. His fees were excessive and unreasonable because he failed to perform the clients' work, and after converting more than $14,000 in client funds to buy cocaine, he falsely advised his clients that he needed more time to prepare their bankruptcy petitions. *Id.* at ¶ 5-6. He also made false representations to the bankruptcy court by seeking leave to pay

filing fees in installments despite the fact that his clients had already paid him the full filing fee. *Id.* at ¶ 6.

{¶ 49} A number of mitigating factors were present, including Hoppel's full and free disclosure to the board, his cooperative attitude toward the disciplinary proceedings, and evidence of his good character apart from the charged misconduct. *Id*. at ¶ 10, 17. But perhaps most importantly, Hoppel had successfully completed a 90-day inpatient-treatment program to address the drug addiction that had caused his misconduct, complied with the terms of his OLAP contract, and had been sober for a year and a half at the time of his hearing. *Id*. at ¶ 22. Moreover, following his disciplinary hearing, he made full restitution to the clients harmed by his misconduct. *Id.*

{¶ 50} Lemieux's conduct is most analogous to that of Hoppel. But the only BCGD Proc.Reg. 10(B)(2) mitigating factor that Lemieux has established is that he does not have a prior disciplinary record. While we accord some mitigating effect to his diagnosed chemical dependency, his entering into an OLAP contract, his treatment efforts, and his 15 months of sobriety at the time of his hearing, he has not presented anywhere near the amount of mitigating evidence that Hoppel did. Nonetheless, given his renewed dedication to his treatment for his addiction, we conclude that an indefinite suspension with the stringent conditions for reinstatement that have been recommended by the board will adequately protect the public from future harm.

{¶ 51} Accordingly, we indefinitely suspend John Louis Lemieux from the practice of law in Ohio. Before he may petition this court for reinstatement, he must (1) execute and fully comply with a new OLAP contract that requires random drug testing, (2) submit to and pass random drug tests once a week for one year and then once every two weeks for a second year, (3) make full restitution of $2,500 to Deborah Hubbard, $2,760 to Jennifer Heise, $1,350 to Shasta Philpott, and $1,000 to Lachelle Pearl, (4) obtain a mental-health

evaluation and a report from a mental-health counselor stating that he is able to return to the competent, ethical, and professional practice of law, and (5) submit to a mental-health evaluation conducted by an expert of relator's choosing, and obtain a report from that expert stating that he is able to return to the competent, ethical, and professional practice of law.

{¶ 52} If Lemieux satisfies the above stated conditions and is reinstated to the practice of law in Ohio, he shall be required to (1) execute a new three-year OLAP contract and comply with its terms, (2) submit to random monthly drug testing for a period of three years, (3) practice law in association with at least one other experienced lawyer for the first year of his reinstatement, (4) serve a three-year period of probation in accordance with Gov.Bar R. V(9) under which his practice of law shall be monitored for the first year and his substance-abuse recovery shall be monitored for the full three years.

{¶ 53} Costs are taxed to Lemieux.

Judgment accordingly.

PFEIFER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

LANZINGER, J., concurs in judgment only.

O'CONNOR, C.J., and O'DONNELL, J., dissent and would disbar respondent.

––––––––––––––––––––

Tucker Ellis, L.L.P, Robert J. Hanna, and Seth H. Wamelink, for relator.

John Louis Lemieux, pro se.

––––––––––––––––––––––––