TOLEDO BAR ASSOCIATION *v.* SHOUSHER.

[Cite as *Toledo Bar Assn. v. Shousher,* 112 Ohio St.3d 533, 2007-Ohio-611.]

(No. 2006–1641—Submitted November 15, 2006—Decided February 28, 2007.)

**Per Curiam.**

{¶ 1} Respondent, Mohamed Y. Shousher of Toledo, Ohio, Attorney Registration No. 0016006, was admitted to the practice of law in Ohio in 1980. On December 5, 2005, relator, Toledo Bar Association, charged respondent in an amended complaint with 19 counts of misconduct involving numerous violations of the Code of Professional Responsibility. A panel of the Board of Commissioners on Grievances and Discipline heard the cause and made findings of fact, conclusions of law, and a recommendation, all of which the board adopted.

### Misconduct

{¶ 2} The parties stipulated to nearly all the misconduct charged in 14 of the 19 counts in the amended complaint. Four other counts were dismissed by relator, and a fifth resulted in no finding of misconduct. Much of the misconduct involved respondent's having accepted retainers from clients and then failing to perform promised legal services or to refund unearned fees. At the hearing, respondent offered evidence of his alcohol and prescription-drug dependence in mitigation of this misconduct.

### Count I—Lowery

{¶ 3} Stacy Lowery hired respondent in April 2004 to represent her in connection with a child-support matter, paying him $200. Respondent admittedly did not deposit the unearned fees into his client trust account, nor did he complete the work for which he had been hired. He also did not notify his client as required that he did not maintain professional liability insurance.

{¶ 4} Respondent stipulated and the board found relative to Count I that he had violated DR 1–104 (requiring a lawyer to notify clients if the lawyer does not maintain specified amounts of malpractice insurance), 6–101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter), and 9–102(A) (requiring a lawyer to deposit client funds in a separate identifiable bank account).

### Count II—Roberts

{¶ 5} Brian and Jean Roberts hired respondent around March 31, 2004, to defend Brian against criminal charges in Toledo Municipal Court, paying him $100 on that day and $100 soon afterward. On June 16, 2004, Brian was arrested in Wood County, Ohio, and his mother gave respondent $500 to obtain Brian's

release at a hearing to be held the next day. Respondent admitted that he did not appear at the hearing, although he claimed that it was because he thought that Brian had agreed to a public defender's representation. Respondent also admitted that he did not perform all the work for which he had been paid, that he did not deposit the unearned fees into a client trust account, and that he did not refund unearned fees upon discharge.

{¶ 6} Respondent stipulated and the board found relative to Count II that he had violated DR 1–104 and 9–102(A).

### Count III—Myrick

{¶ 7} Anthony and Zelda Myrick hired respondent in 2004 to file separate bankruptcy petitions on their behalf, paying him $1,100. Respondent admitted that he did not perform all the work for which he had been paid and that he did not deposit the unearned fees into his client trust account. He also did not notify his clients as required that he did not maintain professional liability insurance.

{¶ 8} Respondent stipulated and the board found relative to Count III that he had violated DR 1–104, 6–101(A)(3), 9–102(A), and 9–102(B)(4) (requiring a lawyer to promptly pay to the client funds that the client is entitled to receive).

### Count IV—Borgelt–Zonker

{¶ 9} Barb Borgelt–Zonker hired respondent in January 2003 to complete a marriage dissolution, paying him $500. Respondent did not deposit the unearned fees into a client trust account, nor did he complete the work for which he had been paid or refund unearned fees to his client upon request.

{¶ 10} Respondent stipulated and the board found relative to Count IV that he had violated DR 1–104, 6–101(A)(3), 9–102(A), and 9–102(B)(4).

### Count V—Pitts

{¶ 11} Ronal Pitts hired respondent in May 2004 to represent Tiara Nelson in connection with a criminal charge in Perrysburg Municipal Court, paying him $250. Respondent did not deposit these unearned fees into a client trust account. He also failed to provide any legal services for Nelson, he did not refund Pitts's fees when asked, and he did not notify his client as required that he did not maintain professional liability insurance.

{¶ 12} Respondent stipulated and the board found relative to Count V that he had violated DR 1–104, 6–101(A)(3), 9–102(A), and 9–102(B)(4).

### Count VIII—Abdouni

{¶ 13} Nazim Abdouni hired respondent in July 2004 to file for a dissolution of marriage. Abdouni paid respondent $550 in legal and filing fees. Respondent

did not complete promised legal services, failed to place unearned fees in a client trust account, and failed to refund unearned fees on request. Respondent also failed to notify his client as required that he did not maintain professional liability insurance.

{¶ 14} Respondent stipulated and the board found relative to Count VIII that he had violated DR 1–104, 6–101(A)(3), 9–102(A), and 9–102(B)(4).

### Count X—Kormad

{¶ 15} Feadora Kormad hired respondent in July 2004 to defend her boyfriend against criminal charges, paying him $360. Respondent met the boyfriend in jail, but failed to appear on his behalf at an August 2, 2004 court hearing. Respondent also did not provide other promised legal services, and he failed to deposit the unearned fees in a client trust account. He further failed to refund the unearned fees on request, and he did not notify his client that he lacked malpractice insurance.

{¶ 16} Respondent stipulated and the board found relative to Count X that respondent had violated DR 1–104, 6–101(A)(3), 9–102(A), and 9–102(B)(4).

### Count XI—Cunningham

{¶ 17} Mark Cunningham hired respondent in July 2004 to help his brothers obtain release from federal custody, paying him $280. Respondent did nothing for the brothers, and he did not place the unearned fees in a client trust account. He also did not refund the unearned fees on request, and he further failed to notify his clients that he lacked malpractice insurance.

{¶ 18} Respondent stipulated and the board found relative to Count XI that respondent had violated DR 1–104, 9–102(A), and 9–102(B)(4).

### Count XII—Ragland

{¶ 19} In 2004, respondent borrowed $870 from Dartanyon Ragland. In attempting to repay the debt, respondent wrote a series of checks that his bank dishonored. Respondent stipulated and the board found that he had thereby violated DR 1–102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

### Count XIV—Horton

{¶ 20} Laurie Kincaid paid respondent $700 to defend Nathan Horton during 2003 against criminal charges. Respondent appeared at a scheduled court date but was denied permission to enter an appearance because, he learned, other counsel had been appointed for Horton. Respondent did not deposit Kincaid's

unearned fees in a client trust account, he did not refund her money on request, and he did not notify his client that he lacked malpractice insurance.

{¶ 21} Respondent stipulated and the board found relative to Count XIV that respondent had violated DR 1–104, 9–102(A), and 9–102(B)(4).

### Count XV—Johnson

{¶ 22} Bonnie and Troy Johnson hired respondent in June 2004 to represent them in a bankruptcy case, paying him $550. Respondent did nothing for the Johnsons, he did not deposit the unearned fees in a client trust account, and he did not refund their money on request. Respondent also failed to notify his clients that he lacked malpractice insurance.

{¶ 23} Respondent stipulated and the board found relative to Count XV that respondent had violated DR 1–104, 9–102(A), and 9–102(B)(4).

### Count XVI—Butler

{¶ 24} Donnell Butler hired respondent in April 2004 to represent him in a criminal case, paying him $200. Respondent did not perform promised legal services, he failed to deposit the unearned fees in a client trust account, and he did not refund the fees on request. He also did not notify his client that he lacked malpractice insurance.

{¶ 25} Respondent stipulated and the board found relative to Count XVI that he had violated DR 1–104, 6–101(A)(3), 9–102(A), and 9–102(B)(4).

### Count XVIII—Graves

{¶ 26} Respondent borrowed $3,000 from Brian Graves in April 2004. In attempting to repay the debt, respondent wrote four checks to Graves from his client trust account, all of which were dishonored by his bank for insufficient funds. Respondent later paid $3,000 to the Client Security Fund, and in July 2005, the fund paid the sum to Graves. Respondent stipulated and the board found that he had thereby violated DR 1–102(A)(4).

### Count XIX—Criminal Charges

{¶ 27} During 2004, respondent obtained two credit cards by completing applications in his ex-wife's name without her authority. He wrote a $200 check on one credit card account, signing the check with his ex-wife's name without her authority, and used the money to pay his secretary. Respondent charged $236.96 on the second credit card and made a $50 payment to the account with a money order on which he had signed his ex-wife's name, all again without her authority. Respondent was charged with two counts of forgery and one count of identity

theft and pleaded guilty, but he was granted intervention in lieu of conviction, see R.C. 2951.041, and placed on probation.

{¶ 28} Respondent stipulated and the board found relative to Count XIX that he had violated DR 1–102(A)(4).

### Recommended Sanction

{¶ 29} In recommending a sanction for respondent's misconduct, the board weighed the mitigating and aggravating features of his case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 30} Respondent's testimony about his battle first with alcohol addiction and later to prescription pain medication was of considerable mitigating effect. See BCGD Proc.Reg. 10(B)(2)(g). The board noted respondent's abuse of alcohol during the 1980s and that he had stopped drinking alcohol during 1989. In 1999, however, respondent quickly became addicted to pain medication after having three surgeries in a short period of time. He twice entered inpatient treatment facilities and participated in a half-dozen other recovery programs for this addiction prior to 2004, but was unable to stop abusing his painkilling drugs. Finally, in August 2004, he entered a recovery treatment center in Florida, and he has remained sober, with the help of that and other treatment programs, since August 10, 2004.

{¶ 31} Timothy Sweeney, program director for HealthCare Connection in Tampa, Florida, the chemical-dependence treatment center that respondent entered in August 2004, testified to respondent's dedication to and resolve in remaining sober. Scott Mote, executive director of the Ohio Lawyers Assistance Program ("OLAP"), gave particularly poignant testimony as to the nature of addiction and his personal observations of respondent's recovery, sobriety, and evident desire to remain in the practice of law.

{¶ 32} In further mitigation of his misconduct, the board found that from the outset, respondent had taken complete responsibility for all his misconduct. He also had no prior disciplinary record and fully cooperated in the disciplinary proceedings. Gov.Bar R. 10(B)(2)(a) and (d). The board also observed that respondent had already made full restitution in the amount of $8,200 to all those he had injured, where necessary through arrangements with his counsel. In addition, respondent submitted numerous character letters from attorneys and judges extolling his character and competence apart from his dependence-induced neglect and other misconduct. Relator did not identify, and the board did not find, evidence of aggravating factors warranting severity.

{¶ 33} Relator requested respondent's indefinite suspension from the practice of law. Respondent advocated a two-year suspension with 18 months stayed. Adopting the panel's report, the board recommended a two-year suspension with 18 months stayed.

## Review

{¶ 34} "Consistently with ABA Standards for Imposing Lawyer Sanctions (1992), Preface and Standard 3.0, when imposing a sanction for attorney misconduct, we consider the duties violated, the actual or potential injury caused, the attorney's mental state, the existence of aggravating or mitigating circumstances, and sanctions imposed in similar cases." *Stark Cty. Bar Assn. v. Ake,* 111 Ohio St.3d 266, 2006-Ohio-5704, 855 N.E.2d 1206, ¶ 44. We adopt the board's findings of misconduct relative to the duties he violated under our Disciplinary Rules. We further accept the board's findings as to the mitigating effect of respondent's dependence and recovery, his full restitution, lack of a disciplinary history, and his reputation. All that is left is to consult precedent.

{¶ 35} Of the cases cited by the board and the parties, we agree that *Cincinnati Bar Assn. v. Washington,* 109 Ohio St.3d 308, 2006-Ohio-2423, 847 N.E.2d 435, is most analogous. In *Washington,* a lawyer billed multiple insurance-company clients more than $91,000 for work that he did not perform and converted retainer fees of $3,000 and $1,000 to his own use during a 19–month period of cocaine and alcohol abuse. We held that a two-year suspension, with 18 months stayed on conditions of OLAP supervision, was warranted not only to protect the public but to ensure the lawyer's recovery from cocaine and alcohol dependence. There, as here, full restitution was made to the clients, the lawyer had no prior disciplinary record, the lawyer cooperated completely in the disciplinary proceedings, and he demonstrated a commitment to recovering from the addictions that contributed to his misconduct.

{¶ 36} Respondent is therefore suspended from the practice of law in Ohio for two years; however, 18 months of this suspension are stayed on the condition that respondent continue to comply with his OLAP recovery contract and commit no further misconduct. If respondent violates the conditions of the stay, the stay will be lifted and respondent shall serve the entire two-year suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

LANZINGER and CUPP, JJ., not participating.

Frederickson, Heintschel, & King Co., L.P.A., and Craig F. Frederickson; Robison, Curphy & O'Connell and James E. Brazeau; and Jonathan B. Cherry, Bar Counsel, for relator.

James D. Caruso, for respondent.