**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
*Geauga Cty. Bar Assn. v. Snavely,* **Slip Opinion No. 2016-Ohio-7829.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-7829

GEAUGA COUNTY BAR ASSOCIATION *v.* SNAVELY.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Geauga Cty. Bar Assn. v. Snavely,* Slip Opinion No. 2016-Ohio-7829.]**

(No. 2016-0854—Submitted July 13, 2016—Decided November 22, 2016.)

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Two-year suspension with final 18 months stayed on conditions.*

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2015-034.

_____

**Per Curiam.**

{¶ 1} Respondent, Carly L. Snavely of Chagrin Falls, Ohio, Attorney Registration No. 0081569, was admitted to the practice of law in Ohio in 2007. Relator, Geauga County Bar Association, charged her with violating the Rules of Professional Conduct based on her actions in two client matters and for her own illegal activity. The parties entered into a consent-to-discipline agreement, in which

they stipulate that Snavely engaged in the charged misconduct and recommend that we suspend her for two years, with 18 months stayed. The Board of Professional Conduct determined that the agreement conforms to the requirements of Gov.Bar R. V(16) and recommends that we adopt it in its entirety.

{¶ 2} Upon review of the record, we accept the board's recommendation and adopt the parties' consent-to-discipline agreement.

**Misconduct**

{¶ 3} The parties stipulate that after graduating from law school, Snavely worked as a public defender in Florida from 2007 to 2008 and then as an assistant prosecuting attorney in the Geauga County prosecutor's office from 2008 to 2011. Since then, she has worked as a solo practitioner.

{¶ 4} In February 2013, William Russell hired Snavely to defend him in a criminal case and later paid her a retainer pursuant to a written fee agreement. At that time, however, Snavely did not maintain a client trust account or know how to properly use one. Nor did she have professional liability insurance or obtain written notification from Russell acknowledging that he was aware that she lacked malpractice insurance. In March 2013, Alex Fisher retained her to defend him in a criminal case, but Snavely also failed to notify him that she lacked malpractice insurance. Fisher's mother paid Snavely a portion of an agreed-upon flat fee, but Snavely failed to deposit the money into a client trust account or inform her client that he might be entitled to a refund of all or a part of the flat fee if she did not complete the representation.

{¶ 5} In June 2013, Snavely was involved in an incident that led to the filing of criminal drug charges against her. In July 2013, she was admitted to an inpatient treatment program for a heroin addiction, and after completing the inpatient program, she underwent several weeks of intensive outpatient treatment. In November 2013, she pled guilty to a fifth-degree felony for heroin possession relating to the June incident. The trial judge granted intervention in lieu of

conviction and placed her on community-control sanctions for two years. Nearly one year early, in December 2014, the judge found that she had complied with the conditions of her community control and dismissed the case.

{¶ 6} In the meantime, Russell filed a grievance against Snavely, claiming that because of her drug addiction and treatment, he had been forced to retain other counsel to represent him. Snavely later acknowledged that although both Russell and Fisher ultimately obtained substitute counsel, she was unaware of—and therefore failed to comply with—the appropriate procedures for withdrawing from representation of a client.

{¶ 7} The parties stipulate that Snavely has not used illegal drugs since January 11, 2014, that she is in full compliance with her contract with the Ohio Lawyers Assistance Program ("OLAP"), and that she has actively participated in recovery programs. Additionally, after becoming clean, she made restitution to Russell in the amount of $3,500 and to Fisher's mother in the amount of $2,650.

{¶ 8} The parties also stipulate that although Snavely has no memory of doing so, she forged Russell's signature on a legal-malpractice-waiver form. As a result, Snavely was charged with forgery in May 2015. She ultimately pled guilty to a first-degree misdemeanor for attempted forgery and served three days in jail.

{¶ 9} Based on this conduct, the parties stipulate that Snavely violated Prof.Cond.R. 1.4(c) (requiring a lawyer to inform the client on a separate written form that the lawyer does not maintain professional liability insurance and requiring the client to sign the form), 1.5(d)(3) (prohibiting a lawyer from charging a flat fee without simultaneously advising the client in writing that the client may be entitled to a refund of all or part of the fee if the lawyer does not complete the representation), 1.15(a) (requiring a lawyer to hold property of clients in an interest-bearing client trust account, separate from the lawyer's own property), 1.15(c) (requiring a lawyer to deposit advance legal fees and expenses into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses

incurred), 1.15(e) (requiring a lawyer to promptly distribute all portions of client funds that are held in trust), 1.16(a) (requiring a lawyer to withdraw from representation when the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client), 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

{¶ 10} We agree that Snavely engaged in this misconduct.

## Sanction

{¶ 11} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors, and the sanctions imposed in similar cases. *See* Gov.Bar R. V(13)(A).

### *Aggravating and mitigating factors*

{¶ 12} As an aggravating factor, the parties stipulate that Snavely acted with a selfish or dishonest motive in falsifying Russell's name on a legal document. *See* Gov.Bar R. V(13)(B)(2).

{¶ 13} In mitigation, the parties agree that Snavely has no prior discipline, made timely and good-faith restitution, and is well respected in the local legal and drug-recovery communities. *See* Gov.Bar R. V(13)(C)(1), (3), and (5). In addition, the parties agree that Snavely has served other penalties for her misconduct—namely, community control for the drug-possession charge and the jail sentence for her attempted-forgery conviction—and that she has made other attempts at interim rehabilitation, including hiring a legal-ethics expert to provide her one-on-one training in the areas of fee agreements, client trust accounts, and withdrawing from client matters. *See* Gov.Bar R. V(13)(C)(6) and (8). Indeed, the parties stipulate that with the assistance of her counsel, she is compliant with the dictates of Prof.Cond.R. 1.4(c), 1.5, 1.15, and 1.16.

4

**{¶ 14}** Finally, the parties stipulate that Snavely's addiction qualifies as a mitigating factor under Gov.Bar R. V(13)(C)(7). A chemical-dependency counselor diagnosed Snavely with a severe substance-abuse disorder; the disorder contributed to her professional misconduct; she has successfully completed inpatient, outpatient, and aftercare treatment and continues to be monitored by OLAP; and her counselor concludes that she is currently capable of engaging in the competent and ethical practice of law.

*Applicable precedent*

**{¶ 15}** To support their recommended sanction, the parties cite a series of cases in which we imposed two-year suspensions with 18 months conditionally stayed on attorneys who engaged in misconduct while impaired by an addiction but who ultimately demonstrated a sustained period of sobriety after treatment.

**{¶ 16}** For example, in *Toledo Bar Assn. v. Shousher*, 112 Ohio St.3d 533, 2007-Ohio-611, 861 N.E.2d 536, the attorney accepted retainers and then failed to perform the work in numerous cases, failed to deposit the retainers into his client trust account, and failed to notify his clients that he lacked malpractice insurance. In addition, he pled guilty to forgery and identity theft for completing credit-card applications in his ex-wife's name without her authorization, and he admitted to writing a series of dishonored checks. In mitigation, he had no prior discipline, made full restitution to each former client, and cooperated in the disciplinary process. In addition, he participated in various treatment and recovery programs for addictions to alcohol and prescription drugs and had remained sober for over two years. We suspended him for two years but stayed 18 months on conditions, including that he maintain compliance with his OLAP contract. *Id.* at ¶ 36. *See also Disciplinary Counsel v. Hoppel*, 129 Ohio St.3d 53, 2011-Ohio-2672, 950 N.E.2d 171 (attorney suspended for two years with 18 months stayed for, among other things, accepting over $14,000 from clients to represent them but failing to perform the work and instead spending their money on his cocaine addiction;

mitigating factors included full restitution to each client, a cooperative attitude in the disciplinary process, successful completion of inpatient and outpatient treatment programs for his chemical dependency, and a one-and-a-half-year period of sobriety); *Cincinnati Bar Assn. v. Washington*, 109 Ohio St.3d 308, 2006-Ohio-2423, 847 N.E.2d 435 (attorney suspended for two years with 18 months stayed on conditions for similar misconduct emanating from a diagnosed cocaine and alcohol dependency; mitigating factors included successful completion of treatment programs and a sustained period of sobriety).

{¶ 17} The board reviewed the cases cited by the parties and agreed with their recommended sanction. We also agree that *Shousher*, *Hoppel*, and *Washington* are relevant precedents and that a similar sanction is therefore warranted in this case.

### Conclusion

{¶ 18} For the reasons explained above, we accept the parties' consent-to-discipline agreement. Carly L. Snavely is hereby suspended from the practice of law for two years, with the final 18 months stayed on the conditions that she continue to comply with her OLAP contract and refrain from engaging in any further misconduct. If Snavely fails to comply with these conditions, the stay will be lifted and she will serve the entire two-year suspension. It is further ordered that as a condition of reinstatement, she must demonstrate compliance with her OLAP contract. Costs are taxed to Snavely.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LANZINGER, FRENCH, and O'NEILL, JJ., concur.

O'DONNELL, J., dissents, with an opinion joined by KENNEDY, J.

_____

**O'DONNELL, J., dissenting.**

{¶ 19} Respectfully, I dissent.

6

**{¶ 20}** When imposing discipline on members of the bar, our responsibility is to protect the public from attorneys who are unable to demonstrate the ability to engage in the practice of law with the highest moral and ethical standards and to display the highest degree of professionalism in their personal life and professional engagements.

**{¶ 21}** Here, the parties stipulated that Snavely's heroin addiction contributed to her misconduct, including forging her client's signature on a notice that she lacked malpractice insurance, and that she has not used drugs since January 11, 2014.

**{¶ 22}** But when a Geauga County Grand Jury indicted her for two counts of forgery, it alleged that those offenses occurred between June 1, 2014, and July 31, 2014—after she had attained sobriety. And when the trial court accepted her guilty plea to attempted forgery (as the lesser included offense of the forgery charged in the indictment), it granted the state's motion to amend that count to reflect that the offense occurred "*on or between February 25, 2013 – July 31, 2014* instead of June 1, 2014 – July 31, 2014." (Emphasis sic.)

**{¶ 23}** Based on Snavely's admission of guilt and the dates referenced in the amended indictment, it is possible that she committed this offense *after* she last used drugs in January 2014; if so, her addiction did not contribute to or mitigate her misconduct, and therefore, a more severe sanction may be appropriate.

**{¶ 24}** The stipulations do not address whether Snavely cooperated with the disciplinary counsel's investigation. But when relator filed the complaint against her, it alleged that Snavely had "stated that, on February 25, 2013, [she] provided Mr. Russell with a written notice stating that [she] does not carry professional liability insurance," that she had "stated that Mr. Russell signed the written notice in [Snavely's] presence," and that she had "provided relator a photocopy of the written notice." These statements are inconsistent with her current claim to have "no active, working memory of the forgery." And in her answer, Snavely only

denied the allegations against her for want of knowledge, similarly claiming, for example, that she "cannot recall stating that Mr. Russell signed the written notice in [her] presence."

**{¶ 25}** Thus, the scant facts in the record before us—including the allegations in the indictment and in the complaint—suggest that the attempted forgery occurred *after* Snavely had stopped using heroin in January 2014 and *after* the investigation into her misconduct commenced. Relator received Russell's grievance in April 2014, and it was *during the investigation that followed* that Snavely apparently presented the forged document to relator as authentic.

**{¶ 26}** In each of the cases cited by the parties as supporting the recommended suspension of two years with 18 months stayed—*Disciplinary Counsel v. Hoppel*, 129 Ohio St.3d 53, 2011-Ohio-2672, 950 N.E.2d 171; *Toledo Bar Assn. v. Shousher*, 112 Ohio St.3d 533, 2007-Ohio-611, 861 N.E.2d 536; and *Cincinnati Bar Assn. v. Washington*, 109 Ohio St.3d 308, 2006-Ohio-2423, 847 N.E.2d 435—the respective attorneys committed the misconduct *before* attaining sobriety. *Hoppel* at ¶ 11; *Shousher* at ¶ 30-31; *Washington* at ¶ 3, 7. As we explained in *Cleveland Metro. Bar Assn. v. Toohig*, 133 Ohio St.3d 548, 2012-Ohio-5202, 979 N.E.2d 332, an addiction is not a contributing cause to misconduct or a significant mitigating factor when "much of the charged misconduct occurred after [the] period of sobriety commenced." *Id*. at ¶ 50, 53-54. Further, in *Hoppel*, *Shouster*, and *Washington*, the attorneys had taken responsibility for their misconduct and fully cooperated in the disciplinary proceedings. *Hoppel* at ¶ 10; *Shousher* at ¶ 32; *Washington* at ¶ 6. None claimed to lack memory of committing the misconduct.

**{¶ 27}** In contrast, the stipulations here do not establish that Snavely's misconduct occurred before she attained sobriety or that there was a causal connection between her addiction and the attempted forgery offense, nor do the stipulations reflect that Snavely gave full and free disclosure to the Board of

Professional Conduct or had a cooperative attitude toward the disciplinary proceedings, which is significant because she has claimed not to remember committing the attempted forgery offense and appears to have made untrue statements to relator during the investigation.

{¶ 28} Accordingly, I would remand this matter to the board to determine whether Snavely committed the attempted forgery offense before attaining sobriety and whether she cooperated with the disciplinary investigation and to consider whether a more severe sanction is warranted.

KENNEDY, J., concurs in the foregoing opinion.

_____

Michael T. Judy Co., L.P.A., and Michael T. Judy, for relator.

Dunson Law, L.L.C., and Joseph P. Dunson, for respondent.

_____